**PENNSYLVANIA ENVIRONMENTAL DEFENSE FOUNDATION, Plaintiff,**

v.

**Joseph MAZURKIEWICZ, et al., Defendants.**

**Civ. No. 88–0931.**

United States District Court, M.D. Pennsylvania.

March 28, 1989.

John E. Childe, Jr., Hummelstown, Pa., for plaintiff.

Jules S. Henshell, Deputy Atty. Gen., Com. of Pa., Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. PROCEDURAL AND FACTUAL HISTORY.

This is a citizen's suit allegedly brought under 33 U.S.C. § 1365(b). *See* Pennsylvania Environmental Defense Foundation's amended complaint, ¶ 1. Pennsylvania Environmental Defense Foundation (Foundation) filed an amended complaint on December 6, 1988, in which it named as Defendants the State Correctional Institution at Rockview (Rockview), Joseph Mazurkiewizc [sic], Clarence Peters, and David Lapinski. Mazurkiewicz has submitted to the Court an unsworn declaration under penalty of perjury in which he signed his last name "Mazurkiewicz." *See* attachments to the Defendants' brief filed January 30, 1989, in opposition to the Foundation's motion for partial summary judgment. We will in the caption and hereafter spell this Defendant's last name as he does and will direct the Clerk of Court to amend the docket sheet accordingly. The Foundation alleges in its amended complaint that the latter three Defendants who are natural persons are supervisory personnel at Rockview and that Rockview has repeatedly violated the terms of its National Pollutant Discharge Elimination System permit by discharging from its sewage treatment plant more pollutants than authorized into Spring Creek, located in Centre County, Pennsylvania.

On December 15, 1988, Rockview filed a motion to dismiss the Foundation's amended complaint against it. Rockview predicated its motion to dismiss upon its contention that the Foundation's cause or causes of action against it were barred by the Eleventh Amendment to the United States Constitution. The Foundation opposed Rockview's motion to dismiss on the ground that the Commonwealth of Pennsylvania had explicitly waived its Eleventh Amendment immunity in this instance. By order of February 14, 1989, we granted Rockview's motion to dismiss the Foundation's amended complaint against it because we concluded the Foundation had failed to demonstrate that the Commonwealth of Pennsylvania had waived its Eleventh Amendment immunity for purposes of this case.

On January 24, 1989, Defendants Mazurkiewicz and Lapinski filed a motion to dismiss the Foundation's amended complaint against them. Mazurkiewicz and Lapinski filed a brief in support of their motion to dismiss on February 7, 1989. The Foundation filed on February 21, 1989, a brief in opposition to Mazurkiewicz's and Lapinski's motion to dismiss. Mazurkiewicz and Lapinski have not filed a reply brief. *See* Local Rule 401.7.

### II. DISCUSSION.

Mazurkiewicz and Lapinski make two arguments in support of their motion to dismiss: (1) the Foundation's claims against them in their official capacities are barred by the Eleventh Amendment to the United States Constitution and (2) the Foundation failed to give Mazurkiewicz the advance notice required by 33 U.S.C. § 1365(b)(1)(A) which is necessary before a person may commence a citizen's suit under 33 U.S.C. § 1365(a)(1). Mazurkiewicz and Lapinski do not argue that Lapinski is entitled to have this action dismissed against him if we conclude that the Foundation did not give Mazurkiewicz the advance notice to which he was entitled. We now turn to a discussion of the two arguments made by Mazurkiewicz and Lapinski in support of their motion to dismiss.

A. Whether the Foundation's claims against Mazurkiewicz and Lapinski in their official capacities are barred by the Eleventh Amendment.

1. *Parameters of the Eleventh Amendment.*

██ In the absence of consent by a state, the Eleventh Amendment prevents a

state or one of its agencies or departments from being sued in federal court. *See Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 99–100, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984). The prohibition created by the Eleventh Amendment against suing a state or one of its agencies or departments in federal court applies regardless of the nature of the relief sought in the suit. *Id.* at 100–101, 104 S.Ct. at 907–908. When a suit is brought only against a state official, a question arises as to whether the suit is a suit against the state itself. "The general rule is that a suit [which nominally seeks relief against an official] is [in fact] against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Pennhurst,* 465 U.S. at 101 n. 11, 104 S.Ct. at 908 n. 11 (quoting *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)). A suit against state officials that is in fact a suit against a state is barred regardless of what type of relief is sought. *Pennhurst,* 465 U.S. at 101–102, 104 S.Ct. at 908–909.

■ The Eleventh Amendment jurisprudence outlined above shields states, the agencies and departments of states, and state officials from being sued in federal court under various circumstances. However, the United States Supreme Court has recognized an important exception to the above-discussed immunity from suit in federal court: a suit brought against a state official in which it is alleged that the official's actions are in violation of the United States Constitution or federal law is not barred by the Eleventh Amendment and may be brought in federal court even though the state is the real, substantial party in interest. *Cf. Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Ex parte Young,* 209 U.S. 123, 159–160, 28 S.Ct. 441, 453–454, 52 L.Ed. 714 (1908); *Pennhurst,* 465 U.S. at 102–103, 104 S.Ct. at 909; U.S. Const. art. VI, cl. 2 (the supremacy clause). The theory behind this exception to the Eleventh

Amendment bar to suing certain people or entities in federal court is that when the action of a state official violates the federal constitution or federal law, the official's action is "illegal" and therefore "[t]he state has no power to impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Ex parte Young,* 209 U.S. at 159–160, 28 S.Ct. at 453–454; *see also Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909.

■ When a state official is sued in federal court in circumstances in which the state is the real party in interest and in which the official's conduct is alleged to violate the United States Constitution or federal law there is a limit to the type of relief which the federal court may award against the official. The federal court may not award a monetary judgment against the official which will inevitably be paid from public funds in the state treasury. *Edelman v. Jordan,* 415 U.S. at 663–665, 94 S.Ct. at 1355–1357. Additionally, the federal court may not enter an injunction which directs that a retroactive award of money be made when the award will in fact be paid from public funds. *Pennhurst,* 465 U.S. at 102–103, 104 S.Ct. at 909; *Edelman v. Jordan,* 415 U.S. at 665–669, 94 S.Ct. at 1356–1359. A federal court may only award in such circumstances an injunction that governs the state official's future conduct. *Pennhurst,* 465 U.S. at 102–103, 104 S.Ct. at 909; *see Edelman v. Jordan,* 415 U.S. at 664–669, 94 S.Ct. at 1356–1359.

The Supreme Court in *Edelman v. Jordan* realized that an injunction which governs only a state official's future conduct may nonetheless require the state to spend more money from its treasury than it would have spent if no such injunction had been entered. The Court went on to explain why an injunction which awarded only prospective relief did not violate the Eleventh Amendment despite the expense to the state caused by such an injunction:

As in most areas of the law, the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in

many instances be that between day and night. The injunction issued in *Ex parte Young* was not totally without effect on the State's revenues, since the state law which the Attorney General was enjoined from enforcing provided substantial monetary penalties against railroads which did not conform to its provisions. Later cases from this Court have authorized equitable relief which has probably had greater impact on state treasuries than did that awarded in *Ex parte Young*. In *Graham v. Richardson*, 403 U.S. 365 [91 S.Ct. 1848, 29 L.Ed.2d 534] (1971), Arizona and Pennsylvania welfare officials were prohibited from denying welfare benefits to otherwise qualified recipients who were aliens. In *Goldberg v. Kelly*, 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), New York City welfare officials were enjoined from following New York State procedures which authorized the termination of benefits paid to welfare recipients without prior hearing. But the fiscal consequences to state treasuries in these cases were the necessary result of compliance with decrees which by their terms were prospective in nature. State officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left free to pursue their previous course of conduct. Such an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young, supra.*

415 U.S. at 667–668, 94 S.Ct. at 1357–1358.

### 2. *Mazurkiewicz's and Lapinski's Eleventh Amendment argument.*

The argument made by Mazurkiewicz and Lapinski that the Foundation's claims against them in their official capacities are barred by the Eleventh Amendment may be broken down into two smaller contentions: (1) the relief demanded by the Foundation would in fact operate against the Commonwealth of Pennsylvania and therefore this suit is barred by the Eleventh Amendment and (2) the Foundation's amended complaint does not allege individual conduct by Mazurkiewicz or Lapinski violative of the federal statute in question and therefore this suit is barred by the Eleventh Amendment. We shall discuss both of these contentions.

### a. *Whether the relief demanded by the Foundation is of a type barred by the Eleventh Amendment.*

■ The Foundation in its amended complaint demands the following relief: (1) that we declare the Defendants to have violated and to be in violation of 33 U.S.C. §§ 1311 and 1342; (2) that we enjoin the Defendants from operating Rockview in such a manner as will result in the further violation of its National Pollutant Discharge Elimination System permit; (3) that the Foundation be provided with a copy of each report relating to Rockview's National Pollutant Discharge Elimination System permit which the Defendants submit to either the state or federal government at the time the report is submitted; (4) that we order the Defendants to pay civil penalties of $25,000.00 per day per violation of Rockview's permit; and (5) that we award the Foundation the costs of this action, including reasonable attorney, expert witness, and consultant fees.

Mazurkiewicz and Lapinski admit that Rockview has violated some of the terms of its National Pollutant Discharge Elimination System permit. Mazurkiewicz's and Lapinski's brief in support of their motion to dismiss at 3. Mazurkiewicz and Lapinski further assert, and they support these further assertions with unsworn declarations under penalty of perjury and other evidence, (1) that the sewage treatment plant at Rockview has been and is operated as efficiently as practicable given its age, capacity, and scope, (2) that to increase the scope or capacity of the sewage treatment plant at Rockview and thereby reduce effluent concentrations so as to comply with Rockview's National Pollutant Discharge Elimination System permit would require either replacement of the existing treatment plant or major capital improvements to the existing plant, (3) that Mazurkiewicz and Lapinski have no authority to make capital improvements to the sewage treat-

ment plant at Rockview, (4) that only the Pennsylvania Department of General Services has the authority to institute capital improvements to the sewage treatment plant at Rockview, and (5) that the Commonwealth of Pennsylvania has for some time planned to supplant the sewage treatment plant at Rockview by tying into the local municipal treatment plant which is under construction and the Commonwealth has taken steps to effectuate such a tie-in. Mazurkiewicz's and Lapinski's brief in support of their motion to dismiss at 6–7.

We are of the view that there is no constitutional difference between the expenses which the Commonwealth of Pennsylvania would most likely be required to bear were we to order Mazurkiewicz and Lapinski to comply prospectively with the terms of Rockview's National Pollutant Discharge Elimination System permit and those expenses which were apparently incurred as a result of prospective injunctive relief awarded against Arizona, Pennsylvania, and New York state officials and, if incurred, almost certainly paid from the state treasuries of those states. Because the United States Supreme Court has held that the latter expenses do not run afoul of the Eleventh Amendment, *see Edelman v. Jordan,* 415 U.S. at 667, 94 S.Ct. at 1357 and cases cited therein, we are of the view that at least some of the relief demanded by the Foundation is not barred by the Eleventh Amendment.

The assertion that Mazurkiewicz and Lapinski have no authority to make capital improvements to the sewage treatment plant at Rockview similarly does not convince us that this action is barred against them by the Eleventh Amendment. The United States Supreme Court in *Edelman v. Jordan* upheld an injunction entered against the Director of the Illinois Department of Public Aid which prospectively enjoined him from failing to process applications for benefits under the federal-state programs of Aid to the Aged, Blind, or Disabled within the time limits established by federal regulations. In all likelihood, the state of Illinois was required to expend more money processing the applications in conformity with the injunction than it was required to spend previously in processing

the applications in part because Illinois had not previously given to applicants who were found to be eligible benefits for the time period between the time the federal regulations required the applications to be ruled upon and the time when Illinois in fact ruled upon the applications. Similarly, in order for the Commissioner of Social Services of the City of New York to comply with the ruling in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), that a welfare recipient must be afforded a pre-termination evidentiary hearing before his or her welfare benefits may be discontinued, he almost certainly had to spend more money than he spent when no pre-termination evidentiary hearing was afforded. *See Goldberg v. Kelly,* 397 U.S. at 266, 90 S.Ct. at 1019. It seems unlikely that either the Director of the Illinois Department of Public Aid or the Commissioner of Social Services of the City of New York could produce the extra money required to operate their agencies in conformity with the court injunctions without the help or affirmative act of other state officials or bodies such as the governor or state legislature of their respective states. Neither the Plaintiff in *Edelman v. Jordan* nor the Plaintiffs in *Goldberg v. Kelly* sued every possible state official who had some control over the state's purse strings, and the Supreme Court did not find this omission to be fatal to either case. Mazurkiewicz's and Lapinski's lack of authority to make capital improvements to the sewage treatment plant at Rockview without the participation of other Pennslyvania state officials and bodies is not different except perhaps in degree from the situations in *Edelman v. Jordan* and *Goldberg v. Kelly.* Accordingly, Mazurkiewicz's and Lapinski's lack of authority to make capital improvements does not bar the Foundation from bringing this action against them.

b. *Whether the Foundation's amended complaint alleges individual conduct by Mazurkiewicz and Lapinski violative of the federal statute in question in this case.*

■ Mazurkiewicz and Lapinski argue that they may not be held liable based upon

the allegations made in the Foundation's amended complaint because the amended complaint does not allege individual conduct by them violative of the federal statute at issue in this case. Mazurkiewicz and Lapinski further assert that in accordance with Rockview's obligations under its National Pollutant Discharge Elimination System permit, they have monitored and reported the effluent concentrations from the sewage treatment plant at Rockview on Discharge Monitoring Reports and forwarded such reports to the Pennsylvania Department of Environmental Resources. Mazurkiewicz's and Lapinski's brief in support of their motion to dismiss at 6. An unsworn declaration under penalty of perjury made by Mazurkiewicz which accompanies his and Lapinski's brief in support of their motion to dismiss states in pertinent part as follows: (1) he is the Superintendent at Rockview and has been so since 1970; (2) as Superintendent, he is the chief executive officer of the institution; and (3) his staff informs him that the sewage treatment plant at Rockview is operated as efficiently as is practicable given its age, capacity, and scope. An unsworn declaration under penalty of perjury made by Lapinski which accompanies Mazurkiewicz's and his brief in support of their motion to dismiss states in pertinent part as follows: (1) he is currently the utility plant supervisor at Rockview and has held this position since July, 1984; (2) he does not currently serve as the primary direct operator of the sewage treatment plant at Rockview; (3) his duties as utility plant supervisor include oversight of the sewage treatment plant, the water treatment plant, the boiler plant, and the laboratory for the sewage treatment plant; (4) based upon laboratory testing performed by others and reported to him, he compiles results and prepares Discharge Monitoring Reports on behalf of Rockview; (5) during his employment at Rockview, he has always endeavored to operate the sewage treatment plant as efficiently as practicable given its capacity, scope, and age; and (6) the sewage treatment plant at Rockview operates as efficiently as practicable considering its capacity, scope, and age.

Section 1365(a)(1) of 33 U.S.C. provides in relevant part, "[A]ny citizen may commence a civil action on his own behalf against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation...." Mazurkiewicz and Lapinski do not assert that a citizen may not bring a suit pursuant to 33 U.S.C. § 1365(a)(1) to seek relief from Rockview's violation of the terms of its National Pollutant Discharge Elimination System permit. Mazurkiewicz and Lapinski have cited no cases, statutory provisions, or regulations which indicate that they should not be considered "violat[ers]" under 33 U.S.C. § 1365(a)(1). Because of their responsibilities at Rockview which Mazurkiewicz and Lapinski admit, we cannot say that the Foundation's amended complaint is deficient in pleading claims against Mazurkiewicz and Lapinski under 33 U.S.C. § 1365.

B. Whether the Foundation gave Mazurkiewicz advance notice required under the federal statute at issue in this case.

■ Section 1365(b)(1)(A) of 33 U.S.C. provides in pertinent part as follows: "No action may be commenced ... under subsection (a)(1) of this section [which authorizes citizen suits] prior to sixty days after the plaintiff has given notice of the alleged violation ... to any alleged violator...." Mazurkiewicz has submitted an unsworn declaration under penalty of perjury, appended to his and Lapinski's brief in opposition to the Foundation's motion for partial summary judgment, in which he states the following: "Prior to the above-captioned lawsuit, I received no notice from the plaintiff that I was about to be sued as an alleged violator of the Federal Clean Water Act." The Foundation asserts that this suit is brought under the "Federal Clean Water Act." Foundation's amended complaint, ¶ 1.

The Foundation responds to Mazurkiewicz's argument that he was not given advance notice of this suit by arguing that Mazurkiewicz had actual notice of the al-

leged violations more than 60 days before the commencement of this action and that the Court of Appeals in *Proffitt v. Commissioners, Township of Bristol*, 754 F.2d 504 (3d Cir.1985), has held that actual notice is sufficient to satisfy the notice requirement of 33 U.S.C. § 1365(b)(1)(A). The only evidence presented by the Foundation in support of its argument that Mazurkiewicz had actual notice of the alleged violations is summarized as follows in its brief in opposition to Mazurkiewicz's and Lapinski's motion to dismiss:

> In the case presently before the Court the Sixty (60) Day Notice was sent directly to the prison where all of the named individuals work and are responsible in their positions for the source of the violations at the sewage treatment plant. Additionally, the State was notified by the Sixty (60) Day Notice sent to DER [Pennsylvania Department of Environmental Resources].

Foundation's brief in opposition to Mazurkiewicz's and Lapinski's motion to dismiss at 8.

The "sixty day notice" sent by the Foundation to Rockview contained the following inside address and salutation:

> State Correctional Institution at Rockview
> Box A
> Bellefonte, PA 16823
> RE: Federal Clean Water Act
> Sixty (60) Day Notice
> of Intent to Sue
> Attention: David Lapender
> Dear Mr. Lapender:

Foundation's amended complaint, Exhibit A. The Court of Appeals in *Proffitt v. Commissioners, Township of Bristol*, stated,

> The purpose of the sixty-day notice requirement is to obviate the need for resort to the courts by prompting either administrative enforcement of the laws or voluntary compliance by alleged violators.

754 F.2d at 506. In order for the sixty day notice to satisfy the purpose specified in *Proffitt*, it is necessary that an alleged violator be made aware not only of the alleged violation (about which he may already know) but also that someone else is aware of the alleged violation and that legal action is being contemplated against the alleged violator. If the alleged violator does not receive such notice, there is much less incentive for him or her to comply voluntarily with the federal law which he or she is alleged to be violating. Based upon Mazurkiewicz's unsworn declaration under penalty of perjury and the inside address and salutation of the Foundation's sixty-day notice sent to Rockview, we conclude that Mazurkiewicz did not have actual notice from the Foundation of the alleged violations more than sixty days before this suit was filed. Therefore, Mazurkiewicz is entitled to have this action dismissed against him.

An appropriate order will be entered.

### ORDER # 1 of MARCH 28, 1989

1. The Clerk of Court shall amend the docket sheet in this case so that the Superintendent of Rockview's last name is spelled "Mazurkiewicz."

2. Pennsylvania Environmental Defense Foundation's amended complaint is dismissed insofar as it pleads a cause or causes of action against Mazurkiewicz.

3. Except as provided in ¶ 3 of this order, Mazurkiewicz's and Lapinski's motion filed January 24, 1989, to dismiss Pennsylvania Environmental Defense Foundation's amended complaint against them is denied.

### ORDER # 2 of MARCH 28, 1989

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

By order of February 14, 1989, we dismissed the amended complaint filed by Pennsylvania Environmental Defense Foundation (Foundation) insofar as it pleaded a cause or causes of action against the State Correctional Institution at Rockview (Rockview). By order No. 1 of today's date we dismissed the Foundation's amended complaint insofar as it pleaded a cause or causes of action against Mazurkiewicz.

On January 13, 1989, the Foundation filed a motion for partial summary judgment and a brief in support thereof. A brief in opposition was filed on January 30, 1989, by Defendants Rockview, Mazurkiewicz, and David Lapinski (hereinafter "responding Defendants"). The Foundation filed a reply brief on February 9, 1989. We did not act sooner on the Foundation's motion for partial summary judgment because we were waiting until Mazurkiewicz's and Lapinski's motion to dismiss the amended complaint became ripe for disposition. The Foundation requests in its motion for partial summary judgment that we enter judgment "against the Defendants on the issue of the Defendants' liability for violation [of] Sections 301 and 402 of the Federal Clean Water Act" for failing to meet the terms of Rockview's National Pollutant Discharge Elimination system permit. Foundation's motion for partial summary judgment at 1.

The Foundation filed its original complaint in this action on June 20, 1988. The original complaint named Rockview as the sole Defendant. The Foundation filed an amended complaint on December 6, 1988, in which it named as Defendants Rockview, Mazurkiewicz, Lapinski, and Clarence Peters. The Foundation alleges in its amended complaint that Peters is the maintenance supervisor of the sewage treatment facilities at Rockview. The responding Defendants assert in their brief in opposition to the Foundation's motion for partial summary judgment that service of the Foundation's amended complaint was never perfected upon Peters who died on October 7, 1988. The Foundation in its reply brief does not challenge the assertion by the responding Defendants that it never perfected service upon Peters for purposes of this action. We decline to grant summary judgment in favor of the Foundation on the issue of liability against Peters.

The responding Defendants admit on page 3 of their brief in opposition to the Foundation's motion for partial summary judgment that Rockview has violated some of the terms of its National Pollutant Discharge Elimination System permit by discharging into Spring Creek more pollutants than its permit authorizes. Discharging more pollutants than permitted by one's National Pollutant Discharge Elimination System permit constitutes a violation of 33 U.S.C. §§ 1311 and 1342. *Cf. Environmental Protection Agency v. California ex rel. State Water Resources Control Board,* 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976); *Natural Resources Defense Council, Inc. v. Costle,* 568 F.2d 1369, 1374–1376 (D.C.Cir.1977). The individuals or entities responsible for the discharge of a pollutant in violation of the terms of a National Pollutant Discharge Elimination System permit are strictly liable; no intent or negligence need be shown. *See Student Public Interest Research Group of New Jersey, Inc. v. Tenneco Polymers, Inc.,* 602 F.Supp. 1394, 1400 (D.N.J.1985) (Thompson, J.); *cf. United States v. Earth Sciences, Inc.,* 599 F.2d 368, 374 (10th Cir.1979). Lapinski states the following in an unsworn declaration under penalty of perjury which is appended to the responding Defendants' brief in opposition to the Foundation's motion for partial summary judgment: (1) he is currently the utility plant supervisor at Rockview and has been so since July, 1984; (2) he does not currently serve as the primary direct operator of the sewage treatment plant at Rockview; (3) his duties as utility plant supervisor include oversight of the sewage treatment plant, the water treatment plant, the boiler plant, and the laboratory for the sewage treatment plant; and (4) based upon laboratory testing performed by others and reported to him, he compiles results and prepares discharge monitoring reports on behalf of Rockview.

For the reasons expressed in our opinion of today's date, we are of the view that Lapinski cannot escape liability for violations of 33 U.S.C. §§ 1311 and 1342 which are predicated upon Rockview violating the pollutant discharge limits of its National Pollutant Discharge Elimination System permit by arguing that the Foundation's amended complaint does not allege that he engaged in individual conduct violative of 33 U.S.C. § 1311 or 33 U.S.C. § 1342. Also, for the reasons expressed in our opin-

ion of today's date, Lapinski cannot escape liability even if he has no authority to make capital improvements to the sewage treatment plant at Rockview and capital improvements are the only way, save reducing the inmate population, of enabling Rockview to comply with the terms of its National Pollutant Discharge Elimination System permit. Based upon (1) the admission by the responding Defendants that Rockview has violated the pollutant discharge limits of its National Pollutant Discharge Elimination System permit (2) the supervisory role at Rockview which Lapinski admits having, and (3) the standard of strict liability for violations of pollutant discharge limits specified in National Pollutant Discharge Elimination System permits, we are of the view that the Foundation is entitled to summary judgment against Lapinski on the issue of his liability for violations of 33 U.S.C. §§ 1311 and 1342 stemming from Rockview's violations of the pollutant discharge limits of its National Pollutant Discharge Elimination System permit.

NOW, THEREFORE, IT IS ORDERED THAT:

1. Pennsylvania Environmental Defense Foundation's motion filed January 13, 1989, for partial summary judgment is granted insofar as it demands judgment against Lapinski on the issue of liability and is denied in all other respects.

2. Within 20 days of the date of this order, Pennsylvania Environmental Defense Foundation shall file either a notice indicating that it wishes to pursue its claims against the estate of Peters or an appropriate stipulation or motion pursuant to Fed.R.Civ.P. 41 to dismiss the claims against him.