Frank MANCUSO, Ellen Mancuso, individually and on behalf of their children, Deanna and Theresa Mancuso and F. Mancuso Boatyard, Inc. d/b/a/ Echo Bay Marina, Plaintiffs,

v.

The NEW YORK STATE THRUWAY AUTHORITY, and The City of New Rochelle, Defendants.

No. 93 Civ. 1145 (CLB).

United States District Court, S.D. New York.

March 31, 1995.

John Tartaglia, Ira Levy, White Plains, NY, for Plaintiffs.

O'Connor, McGuinness, Conte, Doyle, Oleson & Collins, Dennis Doyle, Debra Dillon, White Plains, NY, for the City of New Rochelle.

Leslie Allan, Liz Grisaru, State of New York Office of Attorney General, New York City, for the New York State Thruway Authority.

*MEMORANDUM AND ORDER*

BRIEANT, District Judge.

This is a citizen suit brought under Section 505 of the Clean Water Act, 33 U.S.C. § 1365 ("the Act", or the CWA). Plaintiff Frank Mancuso was at relevant times the owner and operator of Echo Bay Marina in New Rochelle, New York (the "Marina"). Plaintiff Ellen Mancuso is the wife of Frank Mancuso who worked at the Marina. Plaintiffs Deanna and Theresa Mancuso are the children of Frank and Ellen Mancuso who allegedly played at the Echo Bay Marina at all times relevant to this lawsuit.

Plaintiffs allege that the defendants have unlawfully violated the Act by discharging pollutants into Echo Bay through a point source known as the "North Avenue Drain", damaging plaintiffs' property and causing physical injury. The pollutants allegedly flow into Echo Bay through the "North Avenue Drain", a storm sewer which was constructed by and belongs to defendant New York State Thruway Authority ("NYSTA"). Plaintiffs allege further that defendant City of New Rochelle (the "City") has illegal storm and sanitary sewer connections to the North Avenue Drain which also bring pollutants into Echo Bay Marina. Plaintiffs have also pleaded supplemental claims for nuisance, trespass, negligence and intentional toxic tort. They seek monetary damages and an injunction preventing future unlawful discharges.

By motions filed May 3, 1994 and May 4, 1994 the City and NYSTA moved for sum-

mary judgment. The Court heard oral argument on June 24, 1994. NYSTA moved principally on the ground that it is an "Arm of the State" entitled to Eleventh Amendment immunity from suit in federal court. NYSTA also contends, as does the City, that it only discharged "stormwater" from the North Avenue Drain, a discharge which was exempt from the Act's permit requirement during the relevant period of this lawsuit. Both defendants also argue that plaintiffs have not complied with the Act's notice requirements, and therefore the court lacks subject matter jurisdiction, and there are other arguments made by the defendants. After careful consideration the Court denies both defendants' motions for summary judgment.

█ In this case the plaintiffs seek monetary damages for alleged past harm as well as prospective injunctive relief. The Eleventh Amendment prohibits a suit from being brought against a State or its agencies in federal court unless the State consents to be sued or unless Congress unequivocally abrogates the immunity. An exception to the Eleventh Amendment's grant of sovereign immunity allows a suit to be brought against the State for prospective injunctive relief of a continuing violation of federal law. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This Court has the jurisdiction and power to enjoin NYSTA from future violation of the CWA if at trial it is found to be in violation. Plaintiffs seek such injunctive relief to stop the pollution.

█ Since a non-frivolous demand for injunctive relief is sufficient to answer the Eleventh Amendment jurisdictional issue in order to dispose of this motion, it is probably not necessary for the Court to consider whether NYSTA is amenable to a damage award notwithstanding the Eleventh Amendment, if it has caused or permitted an unlawful discharge through the North Avenue Drain. Because the progress of this litigation may benefit from consideration of the issue at this time, the Court now expresses a view that damages can in fact be awarded against NYSTA upon a proper evidentiary showing at trial.

NYSTA is not the State of New York. It is merely a public authority created pursuant to statute by the State Legislature. It is governed by a board, as set forth in § 352 of the New York Public Authorities Law, consisting of members appointed for nine year terms and therefore independent of the Legislature and Governor. By § 361–b of the New York Public Authorities Law the Legislature has directed that all awards and judgments against NYSTA shall be paid out of moneys of the Authority. Accordingly, these plaintiffs, should they prevail, will receive nothing from the State treasury.

The foregoing facts concerning NYSTA are sufficient without more to resolve the issue of Eleventh Amendment immunity in favor of plaintiffs. The prior jurisprudence in the Supreme Court on the subject of the Eleventh Amendment has been recast and simplified in the recent decision of *Hess v. Port Authority Trans–Hudson Corporation*, — U.S. ——, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994). As is so often found in Supreme Court jurisprudence, the significance of that decision is best elicited from the dissenting opinion of Justice O'Connor:

"[I]n place of the various factors recognized in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 99 S.Ct. 1171, 59 L Ed.2d 401 (1979), for determining arm-of-the-state status, we may now substitute a single overriding criterion, vulnerability of the state treasury. If a State does not fund judgments against an entity, that entity is not within the ambit of the Eleventh Amendment and suits in federal court may proceed unimpeded. By the Court's reckoning, the state treasury is not implicated on these facts. Neither, it follows, is the Eleventh Amendment." *Id.* — U.S. at ——, 115 S.Ct. at 408.

In the instant case the State Treasury is not implicated by any awards against NYSTA, which will have to be paid out of the toll and concession revenues of its substantial highway network. Furthermore, since the governance of the Thruway is in the hands of an independent board established by the State, the "dignity of the State" discussed in passing in *Hess, supra,* as one of the twin reasons for Eleventh Amendment immunity

is also not implicated. The dignity of NYSTA is no different than the dignity of a County government established by the State to perform a particular local function. It is well known that Counties do not enjoy Eleventh Amendment immunity. *Feeney v. Port Authority Trans–Hudson Corporation,* 873 F.2d 628, 630 (2d Cir.1989), *aff'd on other grounds,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) ( [t]he Court has consistently refused to construe the [Eleventh] Amendment to afford protection to political subdivisions such as counties and municipalities, even though such entities exercise a "slice of state power.").

Indeed, even before the most recent assault on Eleventh Amendment immunity found in *Hess, supra,* this Court would find no Eleventh Amendment immunity, at least on federal question issues. *Kohlasch v. New York State Thruway Authority,* 460 F.Supp. 956 (S.D.N.Y.1978). *See also, Zeidner v. Wulforst,* 197 F.Supp. 23 (E.D.N.Y.1961) (Eleventh Amendment immunity available to NYSTA in a diversity suit).

■ Both defendants also urge the Court to dismiss the plaintiffs' CWA claims for failure to comply with the citizen suit provision of the Act which requires that citizens give notice of a claim, prior to filing suit, to the alleged violator as well as federal and state regulatory agencies. 33 U.S.C. § 1365(b). The primary purpose of the notice requirement is to inform federal and state agencies of the claimed violation, thereby providing them with an opportunity to take their own enforcement and remedial action if so advised.

■ Substantial compliance with the Act's notice requirements is all that is required. *Kitlutsisti v. Arco Alaska, Inc.,* 592 F.Supp. 832 (D.C.Alaska, 1984), *appeal dismissed, vacated on other grounds,* 782 F.2d 800. In this case notices were sent to the regional office of the United States Environmental Protection Agency (EPA), the New York State Department of Environmental Conservation (DEC), and the defendants. The notices were adequate to provide defendants with "sufficient information to permit the recipient to identify the specific standard . . . alleged to have been violated, the activity alleged to constitute the violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice." 40 C.F.R. § 135.3(a). The first notice letters dated July 2, 1992 sent to the defendants contained a report from Materials and Environmental Technologies ("M & E"), an environmental consulting firm, describing in detail the alleged pollution discharging from the North Avenue Drain. While the subsequent formal notices of July 29, 1992 did not contain the M & E report, which is 24 pages in length, the defendants had actual notice of the specific violations alleged (discharge of specified pollutants without a permit), the person or persons responsible (the defendants), the location of the alleged violations, and that the discharge was continuous. Thus, the defendants and necessary government agencies received adequate notice of the alleged violations of the Act, and the Court need not dismiss on that ground.

■ The Court has carefully considered the remaining arguments raised both by defendant NYSTA and the City in support of their respective motions for summary judgment. Both motions are denied. There are substantial questions of fact which prevent resolution of this case on the present submissions to the Court. By way of illustration rather than exhaustion of the voluminous record before the Court, the Court perceives the following disputed issues of fact.

First, NYSTA and the City of New Rochelle argue that there has been no violation of the Clean Water Act because the Act does not require a permit for discharges "composed entirely of stormwater." 33 U.S.C. § 1342(p). Defendants contend that the North Avenue Drain has no sanitary sewage connections and thus the discharges are entirely stormwater, substantially or entirely from the thruway. (NYSTA Memorandum in Support, p. 59) Plaintiffs deny this and assert that there are in fact direct connections of sanitary sewage into the North Avenue Drain. (Plaintiffs' Memorandum in Opposition, p. 35; Plaintiffs' Rule 3(g) statement, p. 2).

Without being able to resolve the disputed issue of whether the City has constructed or permitted illegal sanitary sewage connections to the North Avenue Drain or has permitted them to exist after notice, the Court is unable to determine whether the Clean Water Act's exemption for discharges composed entirely of stormwater is applicable. Whether this storm sewer system serves a population of more than 100,000 may also be disputed, and may determine the applicability of the CWA's § 1342(p) exceptions to the permit requirement for storm water.

The motions are denied.

SO ORDERED.