NATURAL RESOURCES DEFENSE COUNCIL; Santa Monica Baykeeper, Inc.; Terry Tamminen, Plaintiffs–Appellees,

v.

CALIFORNIA DEPARTMENT OF TRANSPORTATION, Defendant,

and

James W. Van Loben SELS, Defendant–Appellant.

No. 94–56558.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 1996.

Decided Sept. 17, 1996.

Glenn B. Mueller, State of California Department of Transportation, Los Angeles, California, for defendant-appellant.

Gail Ruderman Feuer, Mitchell S. Bernard, Nancy Marks, David S. Beckman, Natural Resources Defense Council, Los Angeles, California, for plaintiffs-appellees.

Before HALL, O'SCANNLAIN, and KLEINFELD, Circuit Judges.

Opinion by Judge HALL; Concurrence by Judge O'SCANNLAIN.

CYNTHIA HOLCOMB HALL, Circuit Judge:

This dispute is a citizen enforcement action brought pursuant to the citizens' suit provision of the Clean Water Act, 33 U.S.C. § 1365. Plaintiffs–Appellees[1] filed suit against Defendants–Appellants, the California Department of Transportation ("Caltrans") and its director, James Van Loben Sels, claiming that Caltrans was not in compliance with a Clean Water Act permit that required it to control polluted stormwater runoff from roadways and maintenance yards in Southern California.

The defendants submitted a motion to dismiss for lack of subject matter jurisdiction claiming that the case was barred by the Eleventh Amendment. The district court dismissed all claims against Caltrans because, as an arm of the state, Caltrans is immune from suit under the Eleventh Amendment. In addition, the court dismissed plaintiffs' claims against Van Loben Sels for civil penalties and declaratory relief, because they too were barred by the Eleventh Amendment. However, the court proceeded to trial on plaintiffs' claims for prospective injunctive relief against Van Loben Sels individually. District Court's Order of 11/02/94 (Excerpts of Record ("ER") Exhibit 7).

After a ten-day trial, the district court found that Van Loben Sels had violated the Clean Water Act. Subsequently, the court entered a permanent injunction against Van Loben Sels, requiring a number of specific actions in order to comply with the Clean Water Act permit in the future. (ER Exhibit 13).

The sole issue raised on appeal is whether the district court correctly held that, as a California state official, Van Loben Sels is subject to suit in federal court for violations of the Clean Water Act. We affirm.

**I**

The Eleventh Amendment of the United States Constitution prohibits federal courts from hearing suits brought by private citizens against state governments, without the state's consent. *Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). State immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 142–46, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605 (1993); *Penn-*

1. Plaintiffs in this case are two non-profit environmental groups and a private citizen.

*hurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). In general, federal court jurisdiction will not be found against a state official when the state is the real party in interest. *Pennhurst,* 465 U.S. at 101–02, 104 S.Ct. at 908; *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1686–87, 40 L.Ed.2d 90 (1974).

■ The Supreme Court recognized an important exception to this general rule in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which held that the Eleventh Amendment does not bar suit against a state official acting in violation of federal law. *Id.* at 159–60, 28 S.Ct. at 453–54; *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909. The doctrine of *Ex parte Young* is premised on the notion that a state can not authorize a state officer to violate the Constitution and laws of the United States. Thus, an action by a state officer that violates federal law is not considered an action of the state and, therefore, is not shielded from suit by the state's sovereign immunity. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909; *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54 (The officer is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."). Therefore, a plaintiff may bring suit in federal court against a state officer accused of violating federal law. *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909.

■ Still, there are some limitations upon *Ex parte Young* suits against state officers. In particular, when a plaintiff brings suit against a state official alleging a violation of federal law, the federal court may award prospective injunctive relief that governs the official's future conduct, but may not award retroactive relief that requires the payment of funds from the state treasury. *Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909; *Edelman v. Jordan,* 415 U.S. 651, 667–669, 94 S.Ct. 1347, 1357–59, 39 L.Ed.2d 662 (1974) (holding that the Eleventh Amendment does not bar suit to compel future state compliance with federal standards for processing welfare applications; but rejecting an injunc-tion ordering retroactive payment of previously owed benefits); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979) ("The distinction between that relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other."). Therefore, an injunction against the state officer is permitted, even if it might require substantial outlay of funds from the state treasury, provided that it does not award retroactive relief for past conduct. *Edelman,* 415 U.S. at 667, 94 S.Ct. at 1357–58 ("the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex parte Young* will not in many instances be that between day and night").

Although, as appellant points out, many of the cases applying the *Ex parte Young* doctrine address federal constitutional violations, we have held that the doctrine applies to violations of federal statutory law as well. *Almond Hill Sch. v. United States Dep't of Agriculture,* 768 F.2d 1030, 1034 (9th Cir. 1985) ("The underlying purpose of *Ex parte Young* seems to require its application to claims against state officials for violations of federal statutes."). The Supreme Court has recognized that the *Ex parte Young* doctrine is necessary "to permit federal courts to vindicate federal rights and hold state officials responsible to 'the supreme authority of the United States.'" *Pennhurst,* 465 U.S. at 105, 104 S.Ct. at 910 (quoting *Ex parte Young,* 209 U.S. at 160, 28 S.Ct. at 454). This purpose would be undermined if state officials were not required to act consistently with federal statutes, as well as the federal constitution. *Almond Hill,* 768 F.2d at 1034. Consequently, the *Ex parte Young* exception to Eleventh Amendment immunity applies to violations of federal statutory rights. *See Seminole Tribe of Florida v. Florida,* —— U.S. ——, —— n. 14, 116 S.Ct. 1114, 1131 n. 14, 134 L.Ed.2d 252 (1996) (noting that the opinion leaves open alternative means to ensure states comply with federal laws, such as by allowing "an individual [to] bring suit against a state officer in order to ensure that the officer's conduct is in compliance with

federal law."); *Puerto Rico Aqueduct,* 506 U.S. at 144, 113 S.Ct. at 688 (noting that the *Ex parte Young* doctrine "ensures that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law"); *Pennhurst,* 465 U.S. at 102, 104 S.Ct. at 909; *Coeur d'Alene Tribe of Idaho v. Idaho,* 42 F.3d 1244, 1251 (9th Cir. 1994) ("Under our federalist system, the states are considered unable to act in a manner contrary to federal law. Thus any action on the part of state officials that violates federal law cannot be attributed to the state."), *cert. granted,* —— U.S. ——, 116 S.Ct. 1415, 134 L.Ed.2d 541 (1996). Indeed, several courts have permitted suits against state officials for injunctive relief pursuant to the Clean Water Act. *E.g., Committee to Save Mokelumne River v. East Bay Util. Dist.,* 13 F.3d 305, 309–10 (9th Cir.1993) (holding that the Eleventh Amendment does not bar suit against the members of the California Regional Water Quality Control Board for prospective injunctive relief under the Clean Water Act), *cert. denied,* —— U.S. ——, 115 S.Ct. 198, 130 L.Ed.2d 130 (1994); *Mancuso v. New York State Thruway Authority,* 909 F.Supp. 133, 135 (S.D.N.Y.1995) (permitting a citizen's suit for injunctive relief from future violations of the Clean Water Act); *Pennsylvania Envtl. Defense Found. v. Mazurkiewicz,* 712 F.Supp. 1184, 1189 (M.D.Pa.1989) (same).

■ In the current case, the district court scrupulously followed the dictates of the Supreme Court's Eleventh Amendment cases. The court dismissed all claims against Caltrans because it is a California state agency which is entitled to immunity from suit. *See Puerto Rico Aqueduct,* 506 U.S. at 142–46, 113 S.Ct. at 687–88. It dismissed all claims against Van Loben Sels for civil penalties and declaratory relief pertaining to past violations of the Clean Water Act. *See Quern,* 440 U.S. at 332, 99 S.Ct. at 1139. The remaining claims pertained solely to prospective injunctive relief against Van Loben Sels, which is authorized by *Ex parte Young* and *Edelman.* We find no error in the district court's rulings on these points.

## II

Next, we must address the Supreme Court's recent Eleventh Amendment decision in *Seminole Tribe of Florida v. Florida,* —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The primary effect of *Seminole Tribe* was to overturn the Court's prior decision in *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), which held that Congress may abrogate a state's Eleventh Amendment immunity when it legislates pursuant to its powers under the Commerce Clause. Thus, the Court held in *Seminole Tribe* that the Indian Commerce Clause, which for these purposes is indistinguishable from the Interstate Commerce Clause, does not authorize Congress to abrogate a state's immunity to suit without its consent. *Seminole Tribe,* —— U.S. at —— ——, 116 S.Ct. at 1131–32. Nevertheless, this aspect of *Seminole Tribe* does not apply to the current dispute because the district court already dismissed all claims against the State of California, which was represented by its agency, Caltrans.

Yet, the Supreme Court also held in *Seminole Tribe* that the petitioner's claim, which was barred by the Eleventh Amendment, could not be brought as an *Ex parte Young* suit against the state governor either. The Court held that "where Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right, a court should hesitate before casting aside those limitations and permitting an action against a state officer based upon *Ex parte Young.*" *Id.* at ——, 116 S.Ct. at 1132. Congress may choose to limit the availability of an *Ex parte Young* suit against state officers for violations of federal statutory law, and the Court found that Congress intended to do so when it enacted the statute at issue in *Seminole Tribe. Id.* at —— & n. 17, 116 S.Ct. at 1133 & n. 17.

The Court considered the remedial scheme of the statute at issue, the Indian Gaming Regulatory Act ("IGRA"), and noted that it contained several provisions expressly directed toward the state whose actions were being challenged. *See* 25 U.S.C. § 2710. The remedial scheme in the IGRA was intended to ensure that states would negotiate in good

faith with Indian tribes to enter into compacts to allow certain gaming activities on Indian lands. *See* 25 U.S.C. § 2710(d)(3). If a state fails to enter into negotiations with a tribe that has requested such negotiations, then the IGRA provides a scheme for federal court enforcement and supervision of a Tribal–State compact negotiation. 25 U.S.C. § 2710(d)(7).

The statute at issue in the current dispute, the Clean Water Act, is distinguishable from the IGRA, as the Supreme Court noted in *Seminole Tribe. See* — U.S. at — n. 17, 116 S.Ct. at 1133 n. 17. The Court stated that it "[did] not hold that Congress *cannot* authorize federal jurisdiction under *Ex parte Young* over a cause of action with a limited remedial scheme. We find only that Congress did not intend that result in the [IGRA]." *Id.* The Court then contrasted the IGRA to those statutes "where lower courts have found that Congress implicitly authorized suit under *Ex parte Young*," such as the Clean Water Act. *Id.*

■ When Congress enacted the Clean Water Act citizen suit provision, it specified that it was legislating to the extent permitted by the Eleventh Amendment.[2] Congress intended to encourage and assist the public to participate in enforcing the standards promulgated to reduce water pollution. *See* 33 U.S.C. § 1251(e). To further that goal, Congress enacted the citizen suit provision so that "a citizen enforcement action might be brought against an individual or a government agency." S.Rep. No. 414, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 U.S.C.C.A.N. 3668, 3746. It would seem reasonable, then, that Congress implicitly intended to authorize citizens to bring *Ex parte Young* suits against state officials with the responsibility to comply with clean water standards and permits. Therefore, we find that the district court did not err when it refused to dismiss the plaintiffs' suit against Van Loben Sels, director of Caltrans.

## III

For the foregoing reasons, we find that the district court did not err when it held that Van Loben Sels, as a California state official, is subject to suit in federal court for violations of the Clean Water Act. The district court's refusal to dismiss this action for lack of subject matter jurisdiction is therefore

AFFIRMED.

O'SCANNLAIN, Circuit Judge, specially concurring; Circuit Judge KLEINFELD joining:

I concur in Judge Hall's opinion because it accurately reflects the state of Ninth Circuit law. Our decision in this case is compelled by the two holdings of this court in *Almond Hill Sch. v. United States Dep't of Agriculture*, 768 F.2d 1030 (9th Cir.1985) (holding Eleventh Amendment does not bar action against state officials to enforce a federal statutory right); and *Coeur d'Alene Tribe of Idaho v. Idaho*, 42 F.3d 1244 (9th Cir.1994) (holding Eleventh Amendment does not bar a claim for injunctive relief against state officials seeking to preclude future violations of federal law).

Nevertheless, I want to express my concern about the persistent erosion of the Eleventh Amendment by expanding judicial exceptions within this circuit. In my view, we took a wrong turn in *Almond Hill*, which *Coeur d'Alene* follows. It is reassuring, therefore, to learn that the Supreme Court of the United States, having granted certiorari in *Coeur d'Alene*, has scheduled oral argument for mid-October. Whatever the result of the Supreme Court's review, its timely attention to the delicate interaction between the federal and state governments in the context of the Eleventh Amendment will be most welcome.

2. The citizen suit provision states in part:
"[A]ny citizen may commence a civil action on his own behalf—(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency *to the extent permitted by the eleventh amendment to* *the Constitution* ) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation."
33 U.S.C. § 1365(a) (emphasis added).