**In re Louie ELIAS, Debtor.**

**Louie ELIAS, Appellant,**

**v.**

**UNITED STATES of America and California Franchise Tax Board, Appellees.**

BAP No. CC–97–1079–HRuJ.
Bankruptcy No. SV–96–11721–KL.
Adversary No. SV–96–01295–KL.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 23, 1997.

Decided Feb. 23, 1998.

Louie Elias, Woodland Hills, CA, Pro se.

Herbert A. Levin, Los Angeles, CA, for California Franchise Tax Board.

Before: HAGAN, RUSSELL [1], and JONES, Bankruptcy Judges.

## *OPINION*

HAGAN, Bankruptcy Judge.

The bankruptcy court granted the California Franchise Tax Board's motion to dismiss the adversary proceeding initiated by the Debtors to determine their state tax liability. The motion was grounded on the California Franchise Tax Board's claim of Eleventh Amendment immunity from suit in the federal courts. We conclude the California Franchise Tax Board is immune from suit in the bankruptcy court and AFFIRM the bank-

---

1. Honorable David E. Russell, Chief Bankruptcy Judge for the Eastern District of California, sit-

ting by designation.

ruptcy court's order granting the motion to dismiss.

## FACTS

Louie Elias ("Elias") filed his petition for relief under chapter 7 of title 11,[2] United States Code, on February 16, 1996. The case was a no asset case and the California Franchise Tax Board ("CFTB") filed no claim. Elias filed an adversary proceeding to determine the dischargeability of certain tax debts claimed by CFTB on May 20, 1996. An amended complaint was filed on September 25, 1996. CFTB filed its answer in which it asserted an affirmative defense of sovereign immunity. CFTB then filed a motion to dismiss for lack of jurisdiction on November 11, 1996. A hearing was held on December 10, 1996, which resulted in an order granting CFTB's motion to dismiss. The order was entered January 16, 1997. A timely appeal was filed by Elias on January 22, 1997.

## ISSUE ON APPEAL

Whether 11 U.S.C. § 106(a) abrogates a state's Eleventh Amendment[3] immunity from suit in the bankruptcy court.

## STANDARD OF REVIEW

 The granting or denial of a sovereign immunity defense is an issue of law subject to de novo review. *In re HPA Associates,* 191 B.R. 167, 171 (9th Cir. BAP 1995). The Panel reviews orders of dismissal for abuse of discretion. *In re Morimoto,* 171 B.R. 85, 86 (9th Cir. BAP 1994) (citing *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991)).

## DISCUSSION

CFTB contends the bankruptcy court has no jurisdiction to adjudicate the dischargeability of Elias's tax debts due to the sovereign immunity protections extended to the states under the Eleventh Amendment as interpreted by the Supreme Court in *Semi-*

*nole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

Elias contends the bankruptcy court has jurisdiction because the abrogation of state sovereign immunity found in § 106(a) was enacted pursuant to a valid exercise of Congress's Article I powers. Elias alternatively argues that the bankruptcy court has jurisdiction because the abrogation of state sovereign immunity found in § 106(a) was enacted pursuant to a valid exercise of Congress's power under section 5 of the Fourteenth Amendment.

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. The scope of the amendment has been extended to provide the states immunity from suits brought by their own citizens in the federal court. *Seminole,* 517 U.S. at 62–68, 116 S.Ct. at 1127–1129; *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984).

 If Congress abrogated the Eleventh Amendment immunity from suit when it enacted § 106(a) of the Bankruptcy Code, the immunity defense is ineffective. The analysis to determine whether Congress abrogated the Eleventh Amendment immunity is two-pronged: "first, whether Congress has 'unequivocally expresse[d] its intent to abrogate the immunity,' and second, whether Congress has acted 'pursuant to a valid exercise of power.'" *Seminole,* 517 U.S. at 55–56, 116 S.Ct. at 1123 (quoting *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985)).

**2.** Unless otherwise indicated, all references to "chapter" and "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and all references to "rule" are to the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 1001–9036, which make applicable certain Federal Rules of Civil Procedure ("Fed.R.Civ.P.").

**3.** Unless otherwise indicated, all references to "Article" and "Amendment" are to the United States Constitution.

## I. Intent to Abrogate

■ For Congress to abrogate a state's sovereign immunity, it must clearly express its intent within the text of the statute. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985); *Dellmuth v. Muth*, 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2399–2400, 105 L.Ed.2d 181 (1989). To satisfy this test, Congress must "express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself." *Atascadero*, 473 U.S. at 243, 105 S.Ct. at 3148. But the statute need not cite the source of power for abrogation. *Equal Employment Opportunity Comm'n v. Wyoming*, 460 U.S. 226, 243, n. 18, 103 S.Ct. 1054, 1064, n. 18, 75 L.Ed.2d 18 (1983).

In its amendment of § 106(a), the Bankruptcy Reform Act of 1994 purported to abrogate sovereign immunity of the states. Section 106(a) provides:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections or the Federal Rules of Bankruptcy Procedure, including an order or judgment awarding a money recovery, but not including an award of punitive damages. Such order or judgment for costs or fees under this title or the Federal Rules of Bankruptcy Procedure against any governmental unit shall be consistent with the provisions and limitations of section 2412(d)(2)(A) of title 28.

(4) The enforcement of any such order, process, or judgment against any governmental unit shall be consistent with appropriate nonbankruptcy law applicable to such governmental unit and, in the case of a money judgment against the United States, shall be paid as if it is a judgment rendered by the district court of the United States.

(5) Nothing in this section shall create any substantive claim for relief or cause of action not otherwise existing under this title, the Federal Rules of Bankruptcy Procedure, or nonbankruptcy law.

11 U.S.C. § 106(a). It is clear from the text that § 106(a) "manifests the requisite intent to abrogate." *In re NVR L.P.*, 206 B.R. 831, 837 (Bankr.E.D.Va.1997); *accord In re Mueller*, 211 B.R. 737, 740 (Bankr.D.Mont.1997). Section 106(a) explicitly says "sovereign immunity is abrogated as to a governmental unit." Thus, 106(a) clearly reflects Congress's intent to abrogate the states' Eleventh Amendment immunity from suit in federal court.

## II. Power to Abrogate

The Supreme Court emphasized that any Eleventh Amendment analysis must also include an inquiry into whether Congress has the power to abrogate the states' sovereign immunity. *Seminole*, 517 U.S. at 56–60, 116 S.Ct. at 1124–25. Enactment of bankruptcy legislation is commonly thought to be pursuant to Congress's power from Article I, Section 8, Clause 4, the Bankruptcy Clause.[4]

In *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989), the plurality concluded Congress had the authority under the Article I Commerce Clause[5] to abrogate the states' Eleventh

**4.** "The congress shall have power ... (4) To establish a uniform rule of naturalization, and uniform laws on the subject of bankruptcies throughout the United States."

U.S. Const. art I, § 8, cl. 4.

**5.** "The congress shall have power ... (3) To regulate commerce with foreign nations, and among the several states, and with the Indian tribes."

U.S. Const. art I, § 8, cl. 3.

Amendment immunity. The Court held a federal court could order a state to pay cleanup costs under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"). *Seminole* overruled *Union Gas.*

*Seminole,* on the other hand, holds the Eleventh Amendment prevents Congress, acting pursuant to its Article I powers, from subjecting unconsenting states to suits brought by private parties in federal court. *Seminole,* 517 U.S. at 71–72, 116 S.Ct. at 1131. The majority interpreted the Eleventh Amendment as imposing a state's sovereign immunity as a limitation on the entirety of Article III judicial power. The opinion states:

> Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction.

*Seminole,* 517 U.S. at 71–74, 116 S.Ct. at 1131–32 (footnote omitted).

The *Seminole* Court concluded the Eleventh Amendment barred an Indian tribe from bringing an action against the State of Florida in federal court under the Indian Gaming Regulatory Act. The federal act required a state to negotiate with an Indian tribe for the purpose of entering into a compact governing conduct of gaming activities on the reservation, and authorized a tribe to sue a state in federal court to compel such negotiation. The Court held such a suit violated the state's Eleventh Amendment sovereign immunity because Congress did not have the power under the Commerce Clause to abrogate the state's Eleventh Amendment immunity and Florida had not consented to the suit.

■ Likewise, the Bankruptcy Clause does not give Congress the power to abro-

gate the states' immunity from suit in the federal courts. There is no distinguishing difference between Congress's Commerce Clause power that it purported to exercise in *Seminole* from its power under the Bankruptcy Clause for the purposes of state sovereign immunity. *In re Fernandez,* 123 F.3d 241 (5th Cir.), *as amended,* 130 F.3d 1138 (1997); *see also Hoffman v. Connecticut Dept. of Income Maintenance, et al.,* 492 U.S. 96, 105, 109 S.Ct. 2818, 2824–25, 106 L.Ed.2d 76 (1989) (Scalia, J., concurring in judgment, noting that "there is no basis for treating [Congress's] powers under the Bankruptcy Clause any differently" from its powers under the Commerce Clause); *In re Creative Goldsmiths of Washington, D.C., Inc.,* 119 F.3d 1140, 1145 (4th Cir.1997); *In re Sacred Heart Hosp. of Norristown,* 204 B.R. 132, 138 (E.D.Pa.1997) (noting that "[t]he Bankruptcy Clause is identical to the Indian Commerce Clause in both wording and scope"), *aff'd,* 133 F.3d 237 (3rd Cir. 1998). Consequently, Congress's attempt to abrogate the states' Eleventh Amendment immunity in § 106(a) pursuant to Congress's Bankruptcy Clause power is ineffective.

■ One source for Congress's power to abrogate the states' immunity is the Fourteenth Amendment.[6] The Fourteenth Amendment expanded federal power at the expense of state autonomy, and fundamentally changed the balance of state and federal power struck by the Constitution. *Seminole,* 517 U.S. at 58–60, 116 S.Ct. at 1125. "[T]hrough the Fourteenth Amendment, federal power extend[s] to intrude upon the province of the Eleventh Amendment and therefore … Section 5 of the Fourteenth Amendment allow[s] Congress to abrogate the immunity from suit guaranteed by that Amendment." *Id.* (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976)). Thus, Congress may abrogate, under the Fourteenth Amendment, state sovereign immunity protected by the Eleventh Amendment.

---

**6.** The Fourteenth Amendment provides, in pertinent part: "(5) The congress shall have power to enforce, by appropriate legislation, the provisions of this article."

U.S. Const. amend. XIV, § 5.

■ But Congress does not have the power to pass general, substantive legislation that abrogates state sovereign immunity pursuant to section 5 of the Fourteenth Amendment. *See City of Boerne v. Flores,* —— U.S. ——, ——, 117 S.Ct. 2157, 2164–66, 138 L.Ed.2d 624 (1997); *accord In re Fernandez,* 123 F.3d 241 (5th Cir.1997). The Supreme Court has described this power as "remedial." *See South Carolina v. Katzenbach,* 383 U.S. 301, 326, 86 S.Ct. 803, 817–18, 15 L.Ed.2d 769 (1966). Congress's power under Section 5 extends only to enforcing the provisions of the Fourteenth Amendment. *Flores,* —— U.S. at ——, 117 S.Ct. at 2164. There must be some connection between the statute in question and the prohibitions against the states enumerated in the Fourteenth Amendment. "[I]f Congress does not explicitly identify the source of its power as the Fourteenth Amendment, there must be something about the [statute] connecting it to recognized Fourteenth Amendment aims." *Wilson–Jones v. Caviness,* 99 F.3d 203, 210 (6th Cir.1996), *as amended,* 107 F.3d 358 (1997).

Since § 106(a) does not explicitly identify the Fourteenth Amendment as Congress's source of power in enacting the § 106(a), there must be a connection between § 106(a) and Fourteenth Amendment goals. Elias contends that bankruptcy lies within the "privileges and immunities" of citizenship[7] and thus, § 106 was enacted pursuant to Congress's power under Section 5 of the Fourteenth Amendment. Elias relies on *In re Headrick,* 200 B.R. 963 (Bankr.S.D.Ga. 1996), which found:

> Article I empowers Congress to grant debtors the privileges and immunities of the Bankruptcy Code, and the Fourteenth Amendment gives Congress the right to enforce those privileges and immunities by creating private rights of action against the States. In § 106, Congress unequivocally expressed its intent to abrogate Georgia's immunity, and this abrogation was enacted by a valid exercise of power under the Fourteenth Amendment.

*Headrick,* 200 B.R. at 967 (citing *Mather v. Oklahoma Employment Sec. Comm'n (In re Southern Star Foods, Inc.),* 190 B.R. 419 (Bankr.E.D.Okla.1995)) ("Article I gives Congress the power to legislate on the subject of bankruptcy, and the Fourteenth Amendment allows debtors to enforce the provisions of the Bankruptcy Code in federal court notwithstanding the States' Eleventh Amendment immunity.").

■ The privileges and immunities were listed by the Supreme Court in *Twining v. New Jersey,* 211 U.S. 78, 97, 29 S.Ct. 14, 18–19, 53 L.Ed. 97 (1908). Those recognized by the Court at that time were: (1) the right to pass freely from state to state (*Crandall v. Nevada,* 6 Wall. 35, 73 U.S. 35, 18 L.Ed. 745 (1867)); (2) the right to petition Congress for redress of grievances (*United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1875)); (3) the right to vote for national officers (*Ku Klux Cases,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884)); (4) the right to enter public lands (*United States v. Waddell,* 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673 (1884)); (5) the right to be protected from violence while in the lawful custody of a United States Marshal (*Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892)); and (6) the right to inform United States authorities of any violation of its laws (*In re Quarles,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895)). The *Twining* Court failed to mention the right to carry on interstate commerce (*Crutcher v. Kentucky,* 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649 (1891)), and since *Twining,* the right under 42 U.S.C. § 1982 to take and hold real property (*Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948)) has been added to the list. *In re NVR L.P.,* 206 B.R. 831, 841 (Bankr.E.D.Va. 1997). The Privileges and Immunities Clause only protects those rights "which owe their existence to the Federal government, its National character, its Constitution, or its

---

**7.** Section (1) All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.

laws." *Slaughter–House Cases,* 16 Wall. 36, 83 U.S. 36, 79, 21 L.Ed. 394 (1872).

■ Bankruptcy is not unique to democratic republic forms of government such as ours in the United States. Nor is it unique to a system of government founded on private ownership of property. Bankruptcy is a legal theory aimed at providing economic relief to debtors and creditors. Although Article I empowers Congress to make uniform bankruptcy laws, it does not command Congress to provide bankruptcy laws. In fact, Congress did not enact any bankruptcy provisions until 1800. The ability to use the bankruptcy laws as relief is simply a statutory benefit, not a Constitutional privilege or immunity.

Thus, § 106 was not enacted pursuant to Section 5 of the Fourteenth Amendment, but was clearly enacted pursuant to Congress's Article I powers. As such, Congress lacked the power to abrogate the states' Eleventh Amendment immunity from suit in enacting section 106(a).[8]

## III. Consent or Waiver

■ A state may assert its Eleventh Amendment immunity as a defense to the jurisdiction of the bankruptcy court. Once asserted, the immunity is effective until the state consents to jurisdiction or waives[9] its immunity. *Seminole,* 517 U.S. at 45–48 and 63–66, 116 S.Ct. at 1119 and 1128 (citations omitted); *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990).

In this case, CFTB asserted its Eleventh Amendment immunity from suit in the federal courts in its initial pleading to the bankruptcy court as a defense to the bankruptcy court's jurisdiction in the adversary proceeding. CFTB has continued to assert the immunity defense. Once raised, the immunity defense was effective to limit the bankruptcy court's jurisdiction over CFTB until such time as CFTB consents to jurisdiction or waives its immunity. Since CFTB has continued to assert its immunity as a defense, it has not consented to jurisdiction or waived its immunity. Therefore, the immunity defense continues to be effective to limit the bankruptcy court's jurisdiction over CFTB.

## IV. Ex Parte Young Doctrine

■ The only other basis for jurisdiction, in view of the states' Eleventh Amendment immunity, is the "Ex parte Young doctrine." The doctrine of Ex parte Young allows federal jurisdiction over a suit against a state official, when the state itself could not be sued in federal court, and the plaintiff seeks only prospective relief to end a continuing violation of federal law. *Ex parte Young,* 209 U.S. 123, 150–154, 28 S.Ct. 441, 450–52, 52 L.Ed. 714 (1908). The Supreme Court in *Seminole* reaffirmed the vitality of this rule.[10] *Seminole,* 517 U.S. at 72–74, 116 S.Ct. at 1132. In Elias's case, no state official has been joined. The bankruptcy court did not have the opportunity to exercise jurisdiction over a state official representing CFTB, so it did not have jurisdiction over CFTB by the Ex parte Young doctrine.

---

**8.** Although *Seminole* prevents a debtor or trustee from bringing suit directly against a state in bankruptcy court, they may sue states and state agencies in state court without hindrance from the Eleventh Amendment immunity from suit. *See Hilton v. South Carolina Public Rys. Comm'n,* 502 U.S. 197, 204–205, 112 S.Ct. 560, 564–65, 116 L.Ed.2d 560 (1991). State courts are required to enforce applicable federal law in cases brought before them.

It is important to note what the *Seminole* decision leaves undisturbed. Section 106 authorizes suits against "governmental units" which include the federal government and its agencies, the states and state agencies, municipalities and municipal agencies, and foreign governments and their agencies. Of these, only the states and their agencies are protected by the Eleventh

Amendment under *Seminole.* Other governmental units remain subject to suit pursuant to § 106. *See In re Lazar,* 200 B.R. 358, 381 (Bankr.C.D.Cal.1996).

**9.** The *Seminole* court cites *Union Gas,* 491 U.S. at 14, 109 S.Ct. at 2281 and *Parden v. Terminal Ry. of Alabama State Docks Dept.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), for the proposition that states may waive their immunity.

**10.** The principal effect of the decision in *Seminole,* as it relates to bankruptcy, may be to convert litigation against a state into litigation against the applicable state official. *In re Lazar,* 200 B.R. 358, 383 (Bankr.C.D.Cal.1996) (dicta).

## CONCLUSION

Although Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity from suit in the federal courts, based on *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), Congress does not have the power to do so by the Bankruptcy Clause. Congress has the power to abrogate under the Fourteenth Amendment, Section 5 if it is attempting to guarantee a Constitutional privilege or immunity. However, bankruptcy is not a Constitutional privilege or immunity. Consequently, § 106(a) does not abrogate the states' Eleventh Amendment immunity from suit in the federal courts.

CFTB did not consent to the bankruptcy court's jurisdiction in the adversary proceeding; nor did CFTB waive its immunity. No state official was joined to the suit. The bankruptcy court properly granted CFTB's motion to dismiss because the bankruptcy court lacked jurisdiction over the CFTB. We AFFIRM.