**In re James ELLETT, Debtor.**

**James Ellett, Plaintiff,**

v.

**Gerald Goldberg, Defendant.**

**Bankruptcy No. 94–25454–A–13.**
**Adversary No. 97–2820–A.**
**M.C. No. CAG–1.**

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

Jan. 11, 1999.

---

George Spanos, Esq., Deputy Attorney General, Sacramento, California, for Defendant Gerald Goldberg.

Robert Kolb, Esq., Law Offices of Robert N. Kolb, Walnut Creek, California, for Plaintiff/Debtor James Ellett.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Chief Judge.

This matter comes before the court on defendant Gerald Goldberg's ("Goldberg") Motion to Dismiss the adversary proceeding for lack of jurisdiction. Debtor James Ellett ("Debtor") filed this adversary proceeding on November 13, 1997 against Goldberg, the Executive Director of the California Franchise Tax Board ("FTB"), seeking a declaration that his state income tax liabilities for certain years between 1980 and 1990 have been discharged and seeking to enjoin Goldberg from taking any action, or causing the FTB to take any action, to collect these discharged taxes. Goldberg moves to dismiss on the grounds that he enjoys sovereign immunity under the Eleventh Amendment of the United States Constitution. Debtor opposes the Motion to Dismiss, claiming that he may invoke the jurisdiction of this court under the doctrine of *Ex parte Young*. After a hearing, the court took the matter under submission. For the reasons set forth below, the Motion to Dismiss is DENIED.

## I. FACTUAL BACKGROUND

Debtor filed a petition under Chapter 13 of the Bankruptcy Code on July 11, 1994.[1] The petition duly listed an $18,000 unsecured nonpriority income tax obligation owed to the FTB for various tax years between 1980 and 1990.[2] The FTB was notified of the commencement of Debtor's case and was sent a proof of claim. The FTB never filed a proof of claim.

---

1. Unless otherwise indicated, all references to "chapter" and "section/ § " are to the provisions of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Goldberg does not claim that Debtor's tax obligation was really a priority claim or is otherwise nondischargeable in a Chapter 13. This court lacks the jurisdiction to entertain a suit filed directly against a state taxing authority regarding the dischargeability of a state tax debt. *See In re Mitchell*, 222 B.R. 877, 882–83 (9th Cir. BAP

Debtor's amended Chapter 13 plan was confirmed by the court on April 20, 1995.[3] Debtor completed his Chapter 13 plan payments and received a discharge on April 19, 1997. The FTB was served with a copy of the court's discharge order. Debtor's case was then closed. In October 1997, the FTB sought to collect $21,908.52 from Debtor in delinquent pre-petition taxes for years 1981, 1983, 1984, 1985, and 1990 by attempting to garnish Debtor's wages. Debtor subsequently filed a motion to reopen his bankruptcy case, which was granted on December 31, 1997.

Debtor seeks a declaratory judgment that his tax obligation to the FTB was discharged by the court's discharge order and requests that Goldberg be enjoined from taking any action, or causing the FTB from taking any action, to collect the pre-petition taxes. Goldberg claims that as a state official, sovereign immunity extends to him.

## II. DISCUSSION

### A. STANDARD FOR MOTION TO DISMISS

 Goldberg moves for dismissal under Fed.R.Civ.P. 12(h)(3), made applicable in bankruptcy by Fed.R.Bankr.P. 7012(b), which provides:

> Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

Fed.R.Civ.P. 12(h)(3)(West 1998). A motion under this rule may be made at any time, and if the court lacks subject matter jurisdiction, the suit must be dismissed. *See Augustine v. United States*, 704 F.2d 1074, 1075 n. 3 (9th Cir.1983); *Csibi v. Fustos*, 670 F.2d 134, 137 n. 3 (9th Cir.1982); 5A WRIGHT &

---

1998); *In re Elias*, 218 B.R. 80 (9th Cir. BAP 1998).

3. Debtor's amended plan proposed a 12 percent distribution to the unsecured creditors. Debtor's original plan proposed to pay 8.10 percent to unsecured creditors. The FTB was sent notice of the proposed distribution under the original plan. Because it did not file a claim, the FTB did not receive any distributions under the amended plan.

MILLER, FEDERAL PRACTICE AND PROCEDURE § 1393 (2nd ed.1990). When a party asserts Eleventh Amendment sovereign immunity, it claims that the court lacks subject matter jurisdiction. *Demery v. Kupperman,* 735 F.2d 1139, 1149 n. 8 (9th Cir.1984), *cert. denied sub nom. Rowland v. Demery,* 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); *Mitchell,* 222 B.R. at 879 n. 2.

## B. SOVEREIGN IMMUNITY UNDER THE ELEVENTH AMENDMENT

■ The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. Although the language of the text does not require it, the Eleventh Amendment has been interpreted by the United States Supreme Court as barring suits against a state brought by that state's own citizens in federal court without the state's consent. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); *Hans v. Louisiana,* 134 U.S. 1, 13–15, 10 S.Ct. 504, 506, 33 L.Ed. 842 (1890); *Elias,* 218 B.R. at 82. According to the Court, the Eleventh Amendment stands not so much for what it says but for the principle that it confirms. That being the principle of state sovereign immunity, under which "it is inherent in the nature of the sovereignty not to be amenable to suit without its consent." *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 1122, 134 L.Ed.2d 252 (1996) (citations and internal quotations omitted). State sovereign immunity likewise extends to state officials, such as Goldberg, who act on behalf of the state. *See Sofamor Danek Group, Inc. v. Brown,* 124 F.3d 1179, 1183 (9th Cir.1997); *Natural Resources Defense Council v. California Dept. of Transp.,* 96 F.3d 420, 421 (9th Cir. 1996).

■ However, state officials may be subject to suit in federal court in their individual capacities under the doctrine articulated by the Supreme Court in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *Id.* "The doctrine of *Ex parte Young* allows federal jurisdiction over a suit against a state official, when the state itself could not be sued in federal court, and the plaintiff seeks only prospective relief to end a continuing violation of federal law." *Elias,* 218 B.R. at 86. *See also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, ——, 117 S.Ct. 2028, 2043, 138 L.Ed.2d 438 (1997) (O'Connor, J., concurring in the judgment); *Natural Resources Defense Council,* 96 F.3d at 422; *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1187–88 (10th Cir.1998).

■ The *Young* doctrine is premised on the notion that the state can not authorize a state officer to violate federal law. *Natural Resources Defense Council,* 96 F.3d at 422. Thus, an action by an official that violates federal law is not considered an act by the state and the state can not cloak that officer in its sovereign immunity. *Id.; Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Ex parte Young,* 209 U.S. at 159–60, 28 S.Ct. at 453–54. The doctrine does have limitations. A federal court can not award monetary damages or other retrospective relief designed to remedy past violations of federal law. *See Edelman,* 415 U.S. at 668, 94 S.Ct. at 1358. A declaratory judgment and injunction are, however, appropriate forms of prospective relief. *See, e.g., Coeur d'Alene,* 117 S.Ct. at 2034 (*Young* doctrine permits "suits seeking declaratory and injunctive relief against state officers in their individual capacities."); *In re Kish,* 221 B.R. 118, 137 (Bankr.D.N.J.1998)(citing various cases). Here, by requesting an injunction to prohibit Goldberg, in his capacity as director of the FTB, from violating § 524(a)(2)[4] by taking action to collect allegedly discharged pre-petition taxes, Debtor clearly seeks pro-

---

**4.** Section 524 of the Bankruptcy Code provides:

 (a) A discharge in a case under this title-

 &ast; &ast; &ast; &ast; &ast; &ast;

 (2) operates as an injunction against the commencement or continuation of an action,

the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such is waived...

11 U.S.C. § 524(a)(2) (West 1998).

spective relief.[5] This is "ordinarily sufficient" to invoke the *Young* doctrine. *Coeur d'Alene,* 117 S.Ct. at 2040.

However, the Supreme Court has recently articulated limitations on the applicability of the *Young* doctrine that we must consider. First, in *Seminole Tribe of Florida v. Florida,* the Supreme Court held that the *Ex parte Young* doctrine can not be invoked where "Congress has prescribed a detailed remedial scheme for the enforcement against a state of a statutorily created right." 517 U.S. at 74, 116 S.Ct. at 1132. In that case, the Seminole Tribe of Indians brought suit in federal court against the Governor of Florida under the *Young* doctrine for his alleged failure to have the state comply with the requirements of the federal Indian Gaming Regulatory Act (the "IGRA"). Congress passed the IGRA in order to provide a statutory basis for the operation and regulation of gambling activities on tribal lands. Under this Act, a state and Indian tribe are required to negotiate a compact which would regulate the gaming permitted on Indian land located within the state.

In the IGRA, Congress created a detailed set of step-by-step procedures regarding the creation of a compact. First, the Indian tribe was required to request the state to enter into negotiations to create a compact. Upon receiving such a request, the state was required to negotiate in good faith. If the state did not do so, the Act authorized the tribe to file suit in federal district court to obtain an order requiring the state to negotiate in good faith. If within 60 days of the order a compact has not been concluded, the tribe and state were required to submit their own proposed compacts to a court appointed mediator who would then choose which compact applied. If the state did not consent to a compact chosen by the mediator, the mediator was required to notify the Secretary of the Interior. The Secretary would then prescribe the procedures that would govern gaming on the Indian land.

▪ The Supreme Court held that allowing a tribe to bring an *Ex parte Young* suit to enforce the IGRA would enable it to disregard Congress's intent that this detailed remedial procedure be followed, thereby rendering the statutory scheme "superfluous." *See* 517 U.S. at 73–76, 116 S.Ct. at 1132–33. The *Young* doctrine, a judicially created doctrine, can not be used to usurp a statutorily prescribed remedial procedure. Moreover, the Court noted that allowing a *Young* suit would expose a state official to a broader range of sanctions than Congress had intended. Under a *Young* suit, a state official is exposed to the full range of the court's power, including contempt sanctions, while the IGRA procedures merely exposed the state to the "quite modest" sanction of having the Secretary of Interior determine the extent of gambling on Indian land. *See* 517 U.S. at 74–75, 116 S.Ct. at 1132–33. Therefore under *Seminole Tribe,* the federal courts are precluded from permitting a suit under *Ex parte Young* when Congress has crafted a significantly narrower statutory remedy.

The Bankruptcy Code, on the other hand, does not contain a remedial statutory scheme available to debtors in the event that a state violates a Code provision. *See, e.g., In re*

---

**5.** Goldberg argues that Debtor's action is really against the state's tax agency and that naming him as the defendant is merely a subterfuge to avoid the subject matter limitations of the Eleventh Amendment. "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' " *Pennhurst,* 465 U.S. at 101, 104 S.Ct. at 908 (quoting *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). The general rule is that relief sought nominally against an officer is in fact against the state if the decree would operate against the latter. *Id.* (citations omitted).

However, an action brought under *Ex parte Young* can not be an action against the state because the allegation being made is that the officer is violating federal law. This strips the state officer of his official authority since the state could never have authorized the violation. 465 U.S. at 102–3, 104 S.Ct. at 909. We realize, of course, that this is a fiction and that the state will ultimately bear the burden of the remedy issued against the officer. 465 U.S. at 114 n. 25, 104 S.Ct. at 915 n. 25. Nevertheless, the fiction is necessary. The *Young* doctrine is an attempt to balance the principles of sovereign immunity with the necessity of providing federal courts the authority to vindicate federal rights and hold state officials responsible to the supreme authority of federal law. 465 U.S. at 104–5, 104 S.Ct. at 910. As such, *Young* actions are not against the state and are not barred by the Eleventh Amendment.

*Guiding Light Corp.,* 213 B.R. 489, 492 (Bankr.E.D.La.1997); *In re Lazar,* 200 B.R. 358, 383 (Bankr.C.D.Cal.1996); Gibson, *Sovereign Immunity in Bankruptcy: The Next Chapter,* 70 AM. BANKR. L.J. 195, 215 n. 137 (1996). This conclusion is suggested by the structure of the Bankruptcy Code itself. In § 106(a), Congress abrogates the states' sovereign immunity to suit in federal court. 11 U.S.C. § 106(a). Although that provision has recently been held to be unconstitutional, *Elias,* 218 B.R. 80, Congress would have had no need to abrogate immunity if it had created an alternative remedial scheme to which the states would be subject. In other words, if Congress had prescribed a remedial scheme of the kind found in the IGRA in bankruptcy, there would not have been any need to enact § 106(a). Section 106(a) can not be read as a superfluous provision.[6] *See In re Pacific–Atlantic Trading Co.,* 64 F.3d 1292, 1303 (9th Cir.1995); *Mitchell,* 222 B.R. at 883. Accordingly, we conclude that the holding of *Seminole Tribe* is not a barrier to Debtor's present action under *Ex parte Young.*

The second narrowing of the *Young* doctrine occurred in *Idaho v. Coeur d'Alene Tribe of Idaho.* In that case, the Coeur d'Alene Indian tribe brought suit in federal court against the State of Idaho and various state officials asserting exclusive title in the banks and beds of all waterways (the "submerged lands") surrounding Lake Coeur d'Alene and its adjoining rivers. The tribe claimed title to these lands pursuant to a grant of title by the federal government. The tribe sought a declaratory judgment establishing its exclusive rights over the land as well as a declaration of the invalidity of all Idaho statutes and ordinances which purported to regulate or affect the submerged lands in any way. Finally, it sought an injunction to prohibit state officials from taking any action in violation of the tribe's exclusive use of the land. The Ninth Circuit permitted the tribe's claims for declaratory and injunctive relief against the state officials under the *Young* doctrine insofar as they sought to preclude continuing violations of federal law. A highly fractured Supreme Court reversed, holding that the tribe's suit for declaratory and injunctive relief could not be asserted under *Ex parte Young.*[7]

A majority of the justices held that *Ex parte Young* should not apply because the relief being sought would infringe upon Idaho's "special sovereign interests." 117 S.Ct. at 2040. The Court in *Coeur d'Alene* found that the tribe's suit was "the functional equivalent of a quiet title action." *Id.* The declaratory and injunctive relief being requested by the tribe would essentially extinguish Idaho's control over vast reaches of land and waters deemed by the state to be an integral part of its territory. State control

---

6. Moreover, the *Seminole Tribe* Court itself suggested that its decision did not completely preclude federal jurisdiction over the states in various areas including bankruptcy. *See* 517 U.S. at 72 n. 16, 116 S.Ct. at 1131 n. 16. The Court noted that *Ex parte Young* could still be used to ensure compliance with federal law. *Id.* By citing bankruptcy specifically, the Court, at the very least, implied that the Bankruptcy Code did not contain a remedial scheme analogous to the IGRA that would have precluded a suit under *Young.*

7. Justice Kennedy wrote the principle opinion for the Court, but key provisions of his opinion garnered only the vote of Chief Justice Rehnquist. *See* 117 S.Ct. at 2031 (Kennedy, J., principle opinion, with Rehnquist, C.J., as to Parts II.B, II.C, and II.D). Justice Kennedy proposed that the *Ex parte Young* doctrine should be applied using a case-by-case balancing approach. *Id.* at 2039.

Justices O'Connor, Scalia and Thomas agreed that the tribe's suit should not be permitted under *Young,* but rejected adopting a case-by-case approach. *See* 117 S.Ct. at 2046 (O'Connor, J., concurring in the judgment, with Justices Scalia and Thomas). They believed that *Ex parte Young* should not apply because the tribe's action sought to quiet title and eliminate Idaho's authority to regulate the submerged lands altogether. *Id.* at 2043–44. In their view, the tribe was not seeking to bring the state into compliance with federal law, but to completely extinguish the state's authority over the land.

The dissenting justices also rejected adopting a case-by-case approach to the *Young* doctrine but felt the fact that the tribe's action might preclude Idaho's regulation of the submerged land to be irrelevant to the *Young* analysis. *See* 117 S.Ct. at 2047 (Souter, J., dissenting, with Justices Stevens, Ginsburg, and Breyer). The dissent believed that the tribe's claims to exclusive right to the lands under federal law and their allegation that state officials are violating federal law by exercising authority over the lands were sufficient to sustain a suit under *Young.*

and jurisdiction over submerged lands has long been considered "an essential attribute of [state] sovereignty." *Id.* at 2041. Granting the requested relief would have significantly diminished Idaho's sovereign authority. Therefore, allowing federal jurisdiction over such a suit would be as intrusive into core aspects of state sovereignty as permitting a retroactive award of damages. *Id.* at 2043. Accordingly, under these particular and special circumstances, the Eleventh Amendment is an absolute bar to federal jurisdiction and can not be circumvented by application of the *Ex parte Young* doctrine. *Id.*

■ *Coeur d'Alene* can therefore be read as imposing an important new requirement on federal courts as part of the *Ex Parte Young* analysis. A court must examine whether the relief being sought against a state official "implicates special sovereignty interests." If the requested relief would intrude into core aspects of state sovereignty to the same extent as a legal remedy otherwise barred by the Eleventh Amendment, *Ex parte Young* may not be used to confer jurisdiction upon the federal court. *See ANR Pipeline,* 150 F.3d at 1190.

In this case, Goldberg claims that Debtor's suit implicates California's administration of its income tax system. A state's control and administration of its tax collection system certainly lies at the core of its sovereign powers. *See National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 586, 115 S.Ct. 2351, 2354, 132 L.Ed.2d 509 (1995)("We have long recognized that principles of federalism and comity generally counsel that [federal] courts should adopt a hands-off approach with respect to state tax administration."); *ANR Pipeline,* 150 F.3d at 1193 ("a state's interest in the integrity of its [ ] tax system lies at the core of the state's sovereignty"). As such, it can not be challenged in federal court under *Ex parte Young. ANR Pipeline,* 150 F.3d 1178 (applying *Coeur d'Alene* to deny federal jurisdiction over a suit brought under *Ex parte Young* seeking to alter Kansas' property tax system that favored certain industries over others).

· However, Goldberg overstates the nature of the relief Debtor seeks. Debtor's requested relief would not preclude California from assessing any particular tax or otherwise interfere with its ability to administer its tax system. California is not being asked to alter its tax collection scheme or deviate from any state law or regulation. Rather, Debtor simply seeks to enjoin the collection of taxes allegedly discharged in bankruptcy. California and its taxing authorities are subject to the prohibition against collecting · a discharged debt found in § 524(a)(2) under the Supremacy Clause of the federal Constitution. The mere fact that California may lose some tax revenue by a discharge is not sufficiently intrusive to preclude a suit under *Ex parte Young. See Edelman,* 415 U.S. at 668, 94 S.Ct. at 1358 (doctrine of *Ex parte Young* will allow injunctive relief that might have a substantial ancillary effect on a state treasury); *Natural Defense Council,* 96 F.3d at 422 (same). Therefore, the remedy Debtor seeks would not infringe upon California's "special sovereign interests."

■ Citing Justice Kennedy's principle opinion in *Coeur d'Alene,* Goldberg also argues that Debtor can not proceed under *Ex Parte Young* because there exists an available state court forum to adjudicate his claims. *See* 117 S.Ct. at 2035 (Kennedy, J.) ("*Young* has been applied ... where there is no state forum available to vindicate federal interests"). However, implanting such a requirement into the *Young* doctrine was expressly rejected by a majority of the justices in *Coeur d'Alene. See* 117 S.Ct. at 2045 (O'Connor, J., concurring)("Not only do our [ ] *Young* cases fail to rely on the absence of a state forum as a basis for jurisdiction, but we also permitted federal actions to proceed even though a state forum was open to hear the plaintiff's claims."); 117 S.Ct. at 2057 (Souter, J., dissenting)("The principle opinion's notion that availability of a state forum should have some bearing on the applicability of *Ex parte Young* is [ ] as much at odds with our precedent as with basic jurisdictional principles."). We thus agree with the Tenth Circuit that given the statements of the concurring and dissenting justices in *Coeur d'Alene,* "an *Ex parte Young* injunction still may issue even when the state courts would pro-

vide an adequate forum for the plaintiff's [ ] claims." *ANR Pipeline*, 150 F.3d at 1192. *See also Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir.1998)(not applying those aspects of Justice Kennedy's *Coeur d'Alene* opinion that were rejected by the remainder of the Court); *Earles v. State Bd. of Certified Public Accountants of La.*, 139 F.3d 1033, 1039 (5th Cir.)("a majority of the [Supreme] Court would continue to apply the rule of *Ex Parte Young* as it has been traditionally understood"), *cert. denied*, —— U.S. ——, 119 S.Ct. 444, 142 L.Ed.2d 399 (1998); *Kish*, 221 B.R. at 139 (same).

The doctrine of *Ex parte Young* thus continues to be available to protect a debtor from a state's post-discharge collection efforts. Either the state court can determine the dischargeability of the tax debt through a state proceeding or a federal court applying *Ex parte Young* can make that determination.[8] Moreover, in *Coeur d'Alene* Justice Kennedy believed that the *Young* doctrine should not apply because a forum to litigate the tribe's title claim was expressly provided for under state law.[9] *See* Idaho Code § 5–328 (1997)(waiving Idaho's sovereign immunity in state court to allow the state to be a party in any action affecting the title to real property where it has a claim or interest). In this case however, the California Constitu-

tion prohibits a state court from enjoining the collection of a tax and requires the party challenging the legality of a tax assessment to first pay the amount assessed. CAL. CONST. art. XIII, § 32.[10] *See also In re Neary*, 220 B.R. 864, 869 (Bankr.Ė.D.Pa. 1998)(look to state law to determine the availability of an adequate state forum). Thus, there is no state forum available to grant the relief that Debtor seeks, enjoining Goldberg's ongoing collection efforts in violation of federal law.[11] *See* CAL. REV. & TAX. CODE § 19381 (West 1994); *Connolly v. County of Orange*, 1 Cal.4th 1105, 1114, 4 Cal.Rptr.2d 857, 824 P.2d 663, 668–69 (1992)(a California court can not enjoin the collection of a tax); *Franchise Tax Board v. Superior Court (Safeco Life Ins. Co.)*, 164 Cal.App.3d 526, 542–44, 210 Cal.Rptr. 695 (1985)(FTB can not be enjoined from collecting income tax). It is left to this court to ensure the supremacy of federal law. Accordingly, we conclude that the Supreme Court's decision in *Coeur d'Alene* does not preclude Debtor from pursuing his action against Goldberg under the *Young* doctrine.

## III. CONCLUSION

Debtor's suit seeking declaratory relief and an injunction to stop Goldberg's alleged ongoing violation of § 524(a)(2) properly as-

---

**8.** In Chapter 13, only those debts provided for under the plan and that are dischargeable can be discharged. 11 U.S.C. § 1328(a). Here, Debtor's plan provided for partial payment of his state tax obligation but the FTB was not paid because it did not file a proof of claim. Before this court can enjoin Goldberg's collection efforts, we must determine the dischargeability of the tax because only if the debt was dischargeable would Goldberg be violating § 524(a)(2). This creates the situation where this court could not issue a judgment holding a state tax debt to be dischargeable when the state is sued directly, *see* footnote 2, but must make that determination before issuing an injunction under *Ex parte Young*. Thus, absent some post-discharge collection effort, a debtor can not seek a determination of the dischargeability of a state tax debt in this court.

**9.** Justice Kennedy stated:

In this case, there is neither warrant nor necessity to adopt the *Young* device to provide an adequate judicial forum for resolving the dispute between the Tribe and the State. Idaho's courts are open to hear the case, and the State

neither has nor claims immunity from their process or their binding judgment.
*Coeur d'Alene*, 117 S.Ct. at 2036.

**10.** Article 13, section 32 of the California Constitution provides:

Sec. 32. No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax. After payment of the tax claimed to be illegal, an action may be maintained to recover the tax paid, with interest, in such a manner provided by the Legislature.
CAL. CONST. art. XIII, § 32 (West 1996).

**11.** Justice Kennedy seems to have anticipated the potential of this very problem in *Coeur d'Alene* and left open the possibility of federal jurisdiction under such circumstances. Without expressing an opinion on the issue, he noted that there may be "circumstances in which the unavailability of injunctive relief in state court would raise constitutional concerns under current doctrine." 117 S.Ct. at 2035. That is the situation that arises in this case.

serts an action under the doctrine of *Ex parte Young*. There is no narrower statutory scheme available to vindicate Debtor's rights under the Bankruptcy Code nor does Debtor's requested relief implicate California's special sovereignty interests. We therefore have subject matter jurisdiction to entertain Debtor's suit. Goldberg's Motion to Dismiss is DENIED. The foregoing shall constitute the court's findings of fact and conclusions of law.