In re James ELLETT, Debtor.

**Gerald Goldberg, Executive Director of the Franchise Tax Board, Appellant,**

v.

**James Ellett, Appellee.**

BAP No. EC–99–1122–RBMa.

Bankruptcy No. 94–25454–A–13.

Adversary No. 97–2820–A.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 21, 1999.

Decided Dec. 2, 1999.

---

George C. Spanos, Deputy Attorney General, Sacramento, CA, for Franchise Tax Board.

Robert N. Kolb, Antioch, CA, for James Ellett.

Before RUSSELL, BRANDT, and MARLAR, Bankruptcy Judges.

## OPINION

RUSSELL, Chief Judge.

In an adversary proceeding, the debtor sought a declaration that his prepetition taxes owed to the California Franchise Tax Board ("FTB") had been discharged fol-

lowing the completion of his chapter 13 [1] plan. The debtor also sought to enjoin the FTB's executive director, Gerald Goldberg, from taking any action, or causing the FTB to take any action, to collect the allegedly discharged taxes. Concluding that the debtor's suit properly asserted an action under the *Ex parte Young*[2] doctrine, the bankruptcy court denied Goldberg's motion to dismiss for lack of jurisdiction. Goldberg appeals. We AFFIRM.

## I. FACTS

The debtor, James Ellett, filed his chapter 13 petition on July 11, 1994. The petition listed an $18,000 unsecured nonpriority income tax obligation owed to the California Franchise Tax Board for various tax years between 1980 and 1990. The FTB was notified of the commencement of the case and was sent a proof of claim form. The agency never filed a proof of claim.

The debtor's chapter 13 plan was confirmed by the court on April 20, 1995. He completed his plan payments and received a discharge on April 19, 1997. A copy of the discharge order was served on the FTB and the case was closed.

In October 1997, the FTB sought to collect $21,908.52 from Ellett in allegedly delinquent prepetition taxes for the years 1981, 1983, 1984, 1985, and 1990 by attempting to garnish his wages. He later moved successfully to reopen his bankruptcy case in order to initiate an adversary proceeding. On November 13, 1997, Ellett filed his complaint against the FTB's Executive Director, Gerald Goldberg. The complaint sought a declaration that his state income tax liabilities had been discharged. It also sought to enjoin Goldberg from collecting, or causing the FTB to collect, the prepetition taxes.

On February 27, 1998, Goldberg filed a motion to dismiss the adversary proceeding for lack of jurisdiction, alleging that he enjoyed sovereign immunity under the Eleventh Amendment of the United States Constitution. Ellett opposed the motion to dismiss, invoking the *Ex parte Young* exception to the Eleventh Amendment's jurisdictional bar. A hearing before the bankruptcy court followed on April 20, 1998. The court issued its memorandum of decision on January 11, 1999, finding that the debtor's suit properly asserted an action under *Ex parte Young* and denying Goldberg's motion. Goldberg was granted an extension of time for filing a notice of appeal and on February 10, 1999, timely filed such notice.

## II. ISSUE

Whether the bankruptcy court properly determined that it had jurisdiction over the debtor's adversary proceeding pursuant to *Ex parte Young*.

## III. STANDARD OF REVIEW

We review *de novo* the bankruptcy court's exercise of jurisdiction. *In re ACI–HDT Supply Co.*, 205 B.R. 231, 234 (9th Cir. BAP 1997) (citing *In re Harris Pine Mills*, 44 F.3d 1431, 1434 (9th Cir. 1995); *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir.1986)). Similarly, the granting or denial of a sovereign immunity defense is an issue of law subject to *de novo* review. *In re HPA Associates*, 191 B.R. 167, 171 (9th Cir. BAP 1995).

## IV. DISCUSSION

Whether the debtor's prepetition taxes had been discharged following completion of his chapter 13 plan is the underlying dispute. However, we are limited to the preliminary question whether the Eleventh Amendment bars the bankruptcy court from hearing the debtor's claim. Goldberg argues on appeal that the bankruptcy court does not have jurisdiction to hear the

---

**1.** Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

**2.** 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

matter on the basis that the sovereign immunity reserved to the FTB under the Eleventh Amendment extends to him personally. We disagree.

### 1. *Availability of the Ex parte Young Doctrine*

■ The Eleventh Amendment recognizes the states' sovereign immunity, providing:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. A state's immunity from suit has been extended to suits brought by the state's own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Earlier this century, the Supreme Court framed a limited exception to the states' sovereign immunity in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This exception rests on the premise that a suit against a state official to enjoin an ongoing violation of federal law is not a suit against the state. The *Young* doctrine allows a suit against a state official to go forward where the suit seeks prospective injunctive relief in order to end a continuing violation of federal law. *Ex parte Young*, 209 U.S. 123, 167, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ An allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* doctrine. The doctrine, however, has been the subject of much discussion, most recently in *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), on

which both parties draw in their briefs. In that case, the Court stated:

> [We] do not question the validity of the *Young* doctrine, but acknowledge[] that questions will arise as to its proper scope and application. In resolving these questions, the Court must ensure that the sovereign immunity doctrine remains meaningful, while also giving recognition to the need to prevent violations of federal law.

*Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 262, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997). Though the plaintiffs in *Coeur d'Alene* sought declaratory and injunctive relief against the state of Idaho, alleging ownership of certain submerged state lands, the *Young* doctrine was held inapplicable. *Id.* at 287, 117 S.Ct. 2028. The Court reasoned that the plaintiffs' suit was the "functional equivalent of a quiet title action which implicate[d] special sovereignty interests." *Id.* at 281, 117 S.Ct. 2028. *Young* would ordinarily have been applicable but for the special nature of the suit, which would have required the state to divest itself of lands over which it claimed title.

■ While *Coeur d'Alene* may have suggested a new component to the *Young* analysis—the implication of "special sovereignty interests"—it left unchanged the traditional requirements for *Young*-type actions. Exactly such an action is present here. The debtor requests an injunction to prohibit Goldberg, director of a state agency, from violating § 524(a)(2) [3] by collecting allegedly discharged prepetition taxes. In doing this, he is alleging the violation of federal law and is requesting prospective relief—exactly what is necessary to invoke the *Young* doctrine. Indeed, his suit fits within the classic definition of *Young* and the bankruptcy court so found, stating: "The doctrine of *Ex parte*

---

**3.** Section 524(a)(2) provides:
 **11 USC § 524. Effect of discharge**
 (a) A discharge in a case under this title—
 . . . .
 (2) operates as an injunction against the commencement or continuation of an ac-

tion, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]

*Young* [ ] continues to be available to protect a debtor from a state's post-discharge collection efforts." Memorandum of Decision, January 11, 1999, p. 15. We agree.

### 2. *Appellant's Challenges to Young Jurisdiction*

Goldberg's brief contests the application of *Ex parte Young,* albeit in confusing fashion. We now attempt to distill and respond to his arguments.

Drawing from *Coeur d'Alene,* Goldberg challenges the exercise of *Young* jurisdiction on the basis that it would implicate California's "special sovereignty interest" in the administration of its income tax system. The trial court did not accept this argument. While it recognized that a state's control and administration of its tax collection system lie at the core of its sovereign powers, citing *National Private Truck Council, Inc. v. Oklahoma Tax Comm'n,* 515 U.S. 582, 586, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995), the court did not view the debtor's requested relief as infringing on the system. It explained:

> Debtor's requested relief would not preclude California from assessing any particular tax or otherwise interfere with its ability to administer its tax system. California is not being asked to alter its tax collection scheme or deviate from any state law or regulation. Rather, Debtor simply seeks to enjoin the collection of taxes allegedly discharged in bankruptcy.

Memorandum of Decision, January 11, 1999, p. 13. We are of the same opinion.

It is important to note that the fiscal impact of the debtor's requested relief does nothing to preclude application of *Young.* The debtor argues correctly that although his injunction may affect the amount of revenues the state may collect from him, such result is not due to any challenge to the state's taxing authority, but rather to the supremacy of the federal discharge order issued in his case. Case law supports his contention. *See, e.g.,* *Edelman v. Jordan,* 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("[A]n ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in Ex parte Young...."); *Natural Resources Defense Council v. California Dep't of Transp.,* 96 F.3d 420, 422 (9th Cir.1996) ("[A]n injunction against the state officer is permitted, even if it might require substantial outlay of funds from the state treasury....").

Goldberg's second challenge to the applicability of *Young* maintains that the debtor's action is essentially one brought against the state. Goldberg contends that because the state is the real party in interest, the Eleventh Amendment bars a suit against state officials like himself. His argument ignores *Young* itself.

The Supreme Court has noted that "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963) (per curiam)). It went on to explain that the Court has recognized an important exception to this general rule in the form of *Ex parte Young. Id.* at 102. As we have discussed, the *Young* exception is clearly applicable. Surprisingly, Goldberg's brief attempts to reargue *Young* and the well-established principle of law for which it stands. For example, Goldberg suggests that he would not have been sued were it not for his official state capacity. Of course this is true, but *Young* expressly allows for this. *Young* and its many descendants render Goldberg's arguments unpersuasive.

Goldberg's third challenge to the applicability of *Young* explains that *Young* does not apply when there exists a significant, unresolved issue directly affecting the rights of the state. Until a determination

is made that the discharge order affects Ellett's tax debt, Goldberg posits, there exists such an issue. We address this proposition only to conclude that no authority exists to support it.

### 3. *The Availability of a State Forum*

■ Both parties mention the *Young* doctrine's supposed reliance on the absence of a state forum as a basis for jurisdiction. Goldberg addresses this issue in an equivocal manner, while the debtor meets it head-on. In any case, we agree with the trial court that the absence of a state forum has no effect on the application of *Young*. The court cited relevant case law discounting such a proposition, some of which bears repetition.

The majority of justices in *Coeur d'Alene* took aim at the proposition. Justice O'Connor, writing for Justices Scalia and Thomas, explained: "Not only do our early *Young* cases fail to rely on the absence of a state forum as a basis for jurisdiction, but we also permitted federal actions to proceed even though a state forum was open to hear the plaintiff's claims." *Coeur d'Alene*, 521 U.S. at 292 117 S.Ct. 2028 (O'Connor, J., concurring). Additionally, Justice Souter, writing for Justices Stevens, Ginsburg, and Breyer, stated: "The principal opinion's notion that availability of a state forum should have some bearing on the applicability of *Ex parte Young* is [] as much at odds with precedent as with basic jurisdictional principles." *Id.* at 315–16 (Souter, J., dissenting). These statements speak for themselves and need no further discussion.

### 4. *The Panel's Previous Discussion of Eleventh Amendment Jurisdiction*

We, too, have had the occasion to address the applicability of *Young. See In re Elias*, 218 B.R. 80 (9th Cir. BAP 1998). In *Elias*, a chapter 7 debtor filed an adversary proceeding to determine the dischargeability of state tax debts. *Elias*, 218 B.R. at 82. In its answer, the Califor-

nia Franchise Tax Board asserted an affirmative defense of sovereign immunity. *Id.* The trial court granted the state agency's motion to dismiss for lack of jurisdiction and we affirmed. *Id.* at 87. While acknowledging that § 106(a) reflected Congress' intent to abrogate the states' Eleventh Amendment immunity from suit in federal court, we concluded that Congress lacked the power to do so. *Id.* at 83–86. We drew our analysis from *Seminole Tribe v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

The only other basis for jurisdiction in *Elias*, in our view, was the *Young* doctrine. *Elias*, 218 B.R. at 86. We stated:

> The doctrine of Ex parte Young allows federal jurisdiction over a suit against a state official, when the state itself could not be sued in federal court, and the plaintiff seeks only prospective relief to end a continuing violation of federal law. The Supreme Court in Seminole reaffirmed the vitality of this rule. In Elias's case, no state official has been joined. The bankruptcy court did not have the opportunity to exercise jurisdiction over a state official representing CFTB, so it did not have jurisdiction over CFTB by the Ex parte Young doctrine.

*Id.* (internal citations omitted). Unlike *Elias*, the case at hand is only against a state official. This is one key difference that allows the exercise of federal jurisdiction over the debtor's action.

### V. CONCLUSION

The debtor's suit falls squarely within the parameters of *Ex parte Young*. He alleges the violation of federal law and seeks prospective injunctive relief. Recent pronouncements on *Young*, including our own, do nothing to preclude its availability here. The appellant's arguments to the contrary are not persuasive. We AFFIRM.

BRANDT, Bankruptcy Judge, concurring:

I join in the foregoing opinion, but write separately to observe that section 524(a)(2), quoted in footnote 3, above, may well be a standing *ex parte Young* injunction, in effect from the entry of discharge. *In re DeAngelis,* 239 B.R. 426, 432 (Bankr. D.Mass.1999).

If that is so, Defendant Goldberg (and others similarly situated) collect on arguably discharged debts at their peril, and he faces the same choice as anyone else who's not sure an injunction bars his contemplated course of action: obtain a judicial determination from the issuing court first, or bear the consequences if in error. *Celotex Corp. v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995). Further, adversary proceedings such as the one before us could go directly to the question of sanctions upon determination that the debt in question was, in fact, discharged.